The People of the State of New York ex rel. Edward F. Linton, Appellant, *v.* The Brooklyn Heights Railroad Company, Respondent.

1. Railroad Law — Railroad Corporations Cannot, in the First Instance, Be Compelled by Mandamus to Operate Trains in a Designated Manner. Mandamus will not lie in the first instance upon the application of persons claiming to be aggrieved by the manner in which a railroad company operates its trains, to compel it to restore a continuous train service to a specified station, which service had been partially abandoned, since the Railroad Law (L. 1890, ch. 565) enjoins no such duty upon the company, but instead submits the responsibility of determining how many trains shall be run and at what intervals of time to its board of directors.

2. Directors' Abuse of Discretion in Operating Road May Be Remedied by Board of Railroad Commissioners, whose Determination May Be Enforced by Mandamus and Is Reviewable by Cer-.

TIORARI. In the event, however, of an abuse of the discretion committed to the board of directors in operating the road, complaint may be made to the Board of Railroad Commissioners, which has express authority to determine, upon notice and after a hearing, whether the "mode of operating the road and conducting its business is reasonable and expedient, in order to promote the security, convenience and accommodation of the public" (Railroad Law, § 161), and such determination is enforceable in the courts by mandamus (§ 162) and is reviewable by certiorari, on which review the Appellate Division has the power, and upon it rests the duty, of examining the facts.

*People ex rel. Linton* v. *Brooklyn Heights R. R. Co.*, 69 App. Div. 549, affirmed.

(Argued June 10, 1902; decided October 7, 1902.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered April 15, 1902, which reversed an order of Special Term directing the issuance of a peremptory writ of mandamus pursuant to the verdict of a jury rendered on a trial of the issues raised by an alternative writ of mandamus and the returns thereto.

A short time prior to April 1, 1900, two companies owned all of the elevated railroads in Brooklyn, but at that date defendant acquired by lease possession and control of all such elevated roads, and has since operated them.

Defendant's elevated railroad system extends from the termini at the Brooklyn Bridge and Broadway Ferry to the terminus at Cypress Hills, a system of two main lines, one from Brooklyn Bridge and one from Broadway Ferry, converging at East New York, and thence proceeding by a single road easterly to Cypress Hills, and also of a third subsidiary line connecting Fulton Ferry and the Brooklyn Bridge and extending thence easterly on Broadway to East New York, and thence to Cypress Hills, known as the Lexington avenue route; making three lines westerly of East New York, all connected with the one line between East New York and Cypress Hills.

August 15th following defendant purchased a lot of land extending from Broadway to Fulton street at East New York,

and constructed thereon a junction depot and a track system connecting the elevated road on Broadway with that on Fulton street, where previously these two railroads were about 200 feet apart, so that each passenger wishing to transfer at East New York from the elevated road on Fulton street to that on Broadway and *vice versa* had been required to descend the stairs, cross the block, ascend the stairs of the other road and pay an additional fare. After such construction passengers were allowed to transfer from one road to the other without descending to the street and without extra fare, and certain through trains were run without change of cars and without extra fare from one road to the other at East New York.

In addition to the elevated railroads on Broadway and Fulton street defendant operates a double-track street surface railroad running directly underneath these elevated roads, one from the Broadway Ferry to East New York and another from the Fulton Ferry to East New York, and thence, still continuing underneath the elevated road, easterly to Cypress Hills. After the construction of the union depot at East New York, surface railroad track connections were also made similar to those of the elevated roads, whereby the surface cars of defendant ran upon the grounds of the union depot and passengers were given free transfer from the elevated roads to the surface roads and *vice versa* through the union depot in all directions.

Among the other changes in the service made by defendant was the substitution of a belt line elevated service during certain hours between the bridge and East New York, the operation of which, defendant claims, necessarily prevented the company from operating all of the trains on the Lexington avenue route between the bridge and East New York as through trains, or on the Broadway road between Broadway Ferry and Cypress Hills, so that a person taking a belt line train was compelled to change cars at East New York to the elevated or surface lines for the purpose of continuing easterly toward Cypress Hills. During the hours when the belt line

1902.]  People ex rel. Linton *v.* B. H. R. R. Co.      **93**

N. Y. Rep.]                    Statement of case.

service was in operation the system was a single car service on a twenty minutes headway on the elevated road between Cypress Hills and the union station and increased service on the surface lines between the same points, to which transfers were made without extra charge; but during "rush hours" — from 5 to 10 A. M. and 4 to 8 P. M. — the belt line service was not employed, and defendant ran through elevated trains to Cypress Hills, as before, except on holidays, when there were no through trains, and on Sundays, when there were none except in the summer, and then but a few hours.

Relator complained of defendant's refusal to run through trains to Cypress Hills during all hours as theretofore, and petitioned the court for a writ of mandamus. An alternative writ was issued, came on for trial and resulted in a submission to the jury of a single question, "Does public necessity or convenience require that the defendant operate its elevated road system from and between the termini at the Brooklyn Bridge and Broadway Ferry and the terminus at Cypress Hills in the manner the same was operated prior to the first day of April, 1900?"

The jury answered the question in the affirmative and a writ of mandamus was issued by the Special Term in which this finding was incorporated, and defendant commanded to operate its system as it did prior to April 1, 1900.

The Appellate Division reversed the order of the Special Term and the plaintiff appeals to this court.

*Stephen C. Baldwin* and *Benjamin N. Cardozo* for appellant. The court has jurisdiction to review the order; and if in any view, either of the pleadings or of the proof, the relator was or might be entitled, either on this trial or a new trial, to some form of relief, whether as complete as that granted by the Special Term, or less complete, the action of the Appellate Division in reversing the order of the Special Term and dismissing the proceedings is not to be sustained. (*People ex rel.* v. *Board of Taxes,* 166 N. Y. 154; *People ex rel.* v. *Jeroloman,* 139 N. Y. 14; *People ex rel.* v. *Van*

*Wyck*, 157 N. Y. 495; *People ex rel.* v. *Board of Education*, 158 N. Y. 125; *People ex rel.* v. *Moss*, 161 N. Y. 623; *People ex rel.* v. *Coler*, 168 N. Y. 6; *People ex rel.* v. *Clausen*, 163 N. Y. 523; *People ex rel.* v. *Bd. of Suprs.*, 135 N. Y. 522; *New* v. *Vil. of New Rochelle*, 158 N. Y. 41; *Benedict* v. *Arnoux*, 154 N. Y. 715.) The writ of mandamus will issue to compel an elevated railroad company to operate its road. (*People* v. *N. Y. C. & H. R. R. R.* Co., 28 Hun, 543; *People* v. *A. R. R.* Co., 24 N. Y. 261; *Matter of Loder*, 14 Misc. Rep. 208; *State ex rel.* v. *B. T.* Co., 62 N. J. L. 592; *U. P. R. R.* Co. v. *Hall*, 91 U. S. 343; *State* v. *H. R. R.* Co., 29 Conn. 538; *R. R. Com.* v. *R. R.* Co., 63 Me. 269; *Atty.-Gen.* v. *Boston*, 123 Mass. 475; *People* v. *R., W. & O. R. R.* Co., 103 N. Y. 95; *S. P. Assn.* v. *Mayor, etc.*, 152 N. Y. 257, 265; *Potwin* v. *T. R.* Co., 51 Kan. 609.) The duty to operate its road is a clear and specific legal duty, imposed upon the railroad company by the statutes of this State. (L. 1892, chs. 306, 460, 534, 676, 700, 702; *People* v. *R., W. & O. R. R.* Co., 103 N. Y. 95.) The withdrawal of service by the respondent amounted as matter of law to an abandonment of a portion of its line. While a certain discretion is lodged with the directors to determine how often trains shall be run, the discretion is not unlimited, and when it is so exercised as to cause a virtual abandonment of part of the line, the court may compel the corporation to perform its duty. (*State* v. *H. & N. H. R. R.* Co., 29 Conn. 538; *People* v. *N. Y. C. & H. R. R. R.* Co., 28 Hun, 547.)

*Charles A. Collin* and *William F. Sheehan* for respondent. The pleadings, evidence and verdict, construed most favorably to the relator, do not show any act or omission of the defendant in violation of a specific duty plainly imposed by law. The order of the Appellate Division reversing the final order of the Special Term and dismissing the proceeding, was, therefore, proper. (*People* v. *N. Y., L. E. & W. R. R.* Co., 104 N. Y. 58; *People ex rel.* v. *N. Y. C. & H. R. R. R.* Co., 31 App. Div. 335; *People ex rel.* v. *Railroad Comrs.*, 158 N.

1902.]    People ex rel. Linton *v.* B. H. R. R. Co.    **95**

N. Y. Rep.]    Opinion of the Court, per Parker, Ch. J.

Y. 421; *People ex rel.* v. *Railroad Comrs.*, 160 N. Y. 202;
40 App. Div. 559; *O., etc., R. R. Co.* v. *People*, 120 Ill.
200; *N. P. R. R. Co.* v. *W. T. R. Co.*, 142 U. S. 492;
*Comm.* v. *F. R. R. Co.*, 12 Gray, 180; *People* v. *R., W. &
O. R. R. Co.*, 103 N. Y. 95.)

Parker, Ch. J.    We agree with the Appellate Division
that the court had no power to grant a mandamus in this
proceeding.

The Railroad Law (L. 1890, ch. 565) confers upon the board
of directors of every railroad corporation the power "To regu-
late the time and manner in which passengers and property shall
be transported, and the compensation to be paid therefor" (§ 4,
subd. 8), and further provides that "Every railroad corporation
shall start and run its cars for the transportation of passengers
and property at regular times, to be fixed by public notice, and
shall furnish sufficient accommodations for the transportation
of all passengers and property which shall be offered for trans-
portation at the place of starting, within a reasonable time pre-
viously thereto, and at the junctions of other railroads, and at the
usual stopping places established for receiving and discharging
way passengers and freight for that train; and shall take, trans-
port and discharge such passengers and property at, from and
to, such places, on the due payment of the fare or freight
legally authorized therefor." (§ 34.)

Notwithstanding these provisions, according to the view
adopted by the trial court, the discretion especially committed
to the judgment of the board of directors of a railroad cor-
poration may upon the application of persons claiming to be
aggrieved be subjected to review by court and jury and
their determination in the premises substituted for that of the
directors.

The Supreme Court of the United States and this court
have decided, however, that a writ of mandamus to compel a
railroad to do a particular act can be issued only when by
statute there is a specific legal duty on its part to do that act,
and clear proof of a breach of the duty. (*Northern Pacific*

*R. R. Co.* v. *Dustin*, 142 U. S. 492; *People* v. *N. Y., L. E. & W. R. R. Co.*, 104 N. Y. 58.)

In the latter case the defendant refused to build at the village of Hamburgh on its line a building of sufficient capacity to accommodate its passengers. The village invoked the aid of the railroad commissioners of this state who, after an examination of the matter, determined that such a station as was asked for should be built, and reported their determination to the Attorney-General, who instituted an action in behalf of the People to compel its construction by the defendant. The mandamus was granted at Special Term and affirmed at General Term (40 Hun, 570), but in this court it was held that mandamus would not lie inasmuch as the duty to erect the station was not plainly imposed by statute. In the course of the opinion Judge Danforth said : " As the duty sought to be imposed upon the defendant is not a specific duty prescribed by statute, either in terms or by reasonable construction, the court cannot, no matter how apparent the necessity, enforce its performance by mandamus. It cannot compel the erection of a station house, nor the enlargement of one. The power of the company to provide such buildings is, under the statutes, a permissive one only. If the corporation chooses to exercise it it may. The statute does not exact it. * * * As to that the statute imposes an authority only, not a command, to be availed of at the option of the company in the discretion of its directors, who are empowered by statute to manage ' its affairs,' among which must be classed the expenditure of money for station buildings or other structures for the promotion of the convenience of the public, having regard also to its own interest. With the exercise of that discretion the legislature only can interfere."

This case was cited with approval by the Supreme Court of the United States in the *Dustin Case* (*supra*).

We agree, therefore, with the conclusion of the Appellate Division that mandamus will not lie in this case to compel defendant to operate its road in the same manner as it operated it prior to April 1, 1900, because the statute enjoins no such

1902.]    People ex rel. Linton *v.* B. H. R. R. Co.    97

N. Y. Rep.]    Opinion of the Court, per Parker, Ch. J.

duty upon it, but instead submits the responsibility of determining how many trains shall be run and at what intervals of time to its board of directors.

In the event of an abuse of the discretion committed to a board of directors the legislature has, however, provided a remedy. The legislature authorized the creation of railroad corporations in the first instance, and conferred upon them broad powers, the exercise of which it could subsequently regulate, within reasonable limits. When the teachings of experience made it clear that occasionally the directors of railroads do not sufficiently recognize and provide for the convenience and necessities of the public, the legislature, by chapter 353 of the Laws of 1882, created a board of railroad commissioners and conferred upon them the power, upon due notice to the railroad, and after a hearing, to determine whether " repairs are necessary upon any railroad within this state, or that any addition to the rolling stock, or any addition to or change of the stations or station houses, or that additional terminal facilities shall be afforded, or that any change in the rates or fare for transporting freight or passengers, or that any change in the mode of operating the road and conducting its business is reasonable and expedient in order to promote the security, convenience and accommodation of the public. * * *."

It was under this act that the railroad commissioners, in *People* v. *N. Y., L. E. & W. R. R. Co.* (*supra*), took action looking to the building of a railroad station at Hamburgh. The commissioners decided the station should be built, but were without power to enforce their decision, and the statute conferred no authority on the courts to enforce it. When the controversy came before this court it pointedly called attention to the fact that the statute had clothed the commissioners with judicial powers to hear and determine such questions, but that the law failed in effectiveness because of its omission to furnish a remedy. The court said : " The railroad commissioners are powerless, and as the law now stands neither the attorney-general of the state nor its courts can make their order effectual."

7

Subsequently the railroad commissioners, in their report to the legislature, referred to this decision, repeating its recommendations of amendments authorizing mandamus to enforce decisions of the board. (1888, Vol. I, 22, 23.) The result was that, in the revision of the Railroad Law, the commissioners of statutory revision incorporated in their report to the legislature of 1890 a new provision which, with slight amendment, is now contained in sections 161 and 162 of the Railroad Law. In that report attention was expressly called to the fact that the provision authorizing mandamus, in certain cases, to enforce the recommendations of the board was new.

The present state of the law, therefore, is, that in a number of matters which in the first instance are committed to the discretion of the directors there may be upon notice and after hearing a determination by the railroad commissioners differing in part or *in toto* from the action of the directors, and which supersedes it; and included within such law is the right to determine whether "the mode of operating the road and conducting its business is reasonable and expedient in order to promote the security, convenience and accommodation of the public." And the determination thus made may be enforced in the courts by mandamus. This judicial determination of the commissioners, whether favorable to complainant or railroad, may be reviewed by the court by certiorari, on which review the Appellate Division has the power, and upon it rests the duty, of examining the facts. (*People ex rel. Loughran* v. *Railroad Commissioners,* 158 N. Y. 421; *People ex rel. Steward* v. *Railroad Commissioners,* 160 N. Y. 202.)

Hence, the legislature — in which is vested the power to regulate and control within reasonable limits the affairs of the corporations brought into existence by its permission — has provided a method by which certain matters committed to the discretion of the directors of railroads in the first instance may — in case of seeming abuse of such discretion — be examined by a board of state officers, who are in receipt of regular financial reports from all railroad companies, have power to

make personal investigation of corporation books and opportunity for personal inspection, observation and examination, and can bring to their aid experts in every department of railroad construction or operation. Such officers necessarily become specially skilled in passing upon such questions, but before they can make any determination there must be a hearing upon notice with opportunity for both the aggrieved party and the railroad to present evidence, after which their determination may be made ; but whether it be made in favor of one party or the other, it is open to review by the courts upon application of either party.

It is apparent, therefore, that the relator mistook his remedy, if he has a substantial grievance, for it should have been presented to the railroad commissioners, who have been given by the legislature an authority which the court does not possess of making a determination in relation to grievances which parties think they have by reason of the manner in which the directors have disposed of the questions, among others, of construction and operation, conferred upon them by the legislature, and later made subject to such changes as might be directed by the railroad commissioners after hearing had, which may in turn be reviewed by the court, as we have pointed out.

The order should be affirmed, with costs.

GRAY, O'BRIEN, HAIGHT, VANN, CULLEN and WERNER, JJ., concur.

Order affirmed.