---

In re THAW.

(Supreme Court, Appellate Division, Second Department. April 29, 1910.)

1. INSANE PERSONS (§ 86*)—COMMITMENT IN STATE INSANE HOSPITAL—TRANSFERS—POWER OF COURT.

The court has no power to transfer one acquitted of crime because insane and legally committed under Code Cr. Proc. § 454, to the Matteawan State Hospital designated by the insanity law (Consol. Laws. c. 27) as the hospital for the custody of insane persons committed to it by courts of criminal jurisdiction, since sections 91, 118, 122, 148, regulating transfers from one hospital to another, are silent on the subject of transfers from the Matteawan Hospital, and since there is no place for such an inmate in any other hospital.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 86.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. INSANE PERSONS (§ 46*)—POWER OF STATE.**

The Legislature is the successor of the crown of England as parens patriæ in the case of idiots and lunatics.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 46.*]

**3. INSANE PERSONS (§ 86*)—POWER OF STATE.**

One acquitted of crime because insane and committed under Code Cr. Proc. § 454, to the Matteawan State Hospital, because his insanity would make him, if set free, a danger to public peace, is more than a mere insane ward of the state, and the state is the possessor of him under the police power.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 86.*]

**4. INSANE PERSONS (§ 48*)—REGULATIONS—COURTS.**

Laws 1909, c. 32 (Consol. Laws, c. 27), requiring the State Commission in Lunacy to execute the laws relating to the care of insane persons, and to order investigations of the facts of improper treatment, and to make reasonable orders subject to the approval of a justice of the Supreme Court, etc., enacted under Const. art. 8, §§ 11, 15, relating to State Commission in Lunacy, clothes the commission in lunacy with full power where maladministration is charged, and the Supreme Court may in its discretion dismiss any application based on charges of cruelty by officers of the hospital, where there has been no application to the commission though the visitorial power of the Supreme Court remains.

[Ed. Note.—For other cases, see Insane Persons, Dec. Dig. § 48.*]

Appeal from Special Term, Dutchess County.

Application of Mary C. Thaw for the transfer of Harry K. Thaw from the Matteawan State Hospital to some suitable asylum. From an order referring the matter to a referee, Robert B. Lamb, as superintendent of the Matteawan State Hospital, appeals. Reversed, and order of reference vacated, and application denied.

Argued before HIRSCHBERG, P. J., and JENKS, BURR, RICH, and CARR, JJ.

Franklin Kennedy, Deputy Atty. Gen. (Robert C. Taylor, on the brief), for appellant.

C. Morschauser, for respondent.

JENKS, J. The superintendent of the Matteawan State Hospital showed cause at Special Term why "an order should not be made herein directing that Thaw be taken from the Matteawan State Hospital and transferred therefrom and placed in some suitable asylum, and why the order committing him to said Matteawan State Hospital should not be amended to that effect." Thereupon the court made an order that refers "the matter" to a referee "to take all the evidence that may be offered by either of the parties and report the same to this court with his opinion thereon." The said superintendent appeals. The learned Special Term says in its opinion:

"The only question now to be considered is whether the relator shall be continued in custody at the Matteawan State Hospital or transferred to some other state insane asylum."

And it also says:

"The charges made by the relator and his witnesses of cruelty by officers of the asylum and of an environment injurious to his health, and calculated to retard the recovery of his sanity, and of danger of injury by the violence

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of other inmates, and of antagonism on the part of his keepers that prompts ill treatment, and the positive denials of all these complaints by the officers in charge, cannot be satisfactorily decided upon the papers before me."

It appears, then, that the Special Term took the question of transfer into consideration, and therefore ordered the reference to aid it in determination thereof.

I am of opinion that the court has no power to transfer Thaw from the Matteawan State Hospital to some other state insane asylum. By virtue of an order in People v. Thaw, made at the Criminal Term whereat that case was tried, and by the court that tried the case (People ex rel. Peabody v. Chanler, 133 App. Div. 159, 117 N. Y. Supp. 322, affirmed 196 N. Y. 525, 89 N. E. 1109), Thaw stands legally committed to Matteawan State Hospital. The commitment was made pursuant to section 454 of the Code of Criminal Procedure, that provides as follows:

"When the defense is insanity of the defendant, the jury must be instructed, if they acquit him on that ground, to state the fact with their verdict. The court must thereupon, if the defendant be in custody, and they deem his discharge dangerous to the public peace or safety, order him to be committed to the state lunatic asylum until he becomes sane."

Although this section of the Code of Criminal Procedure does not specify the hospital at Matteawan, the insanity law points it out as the exclusive place for his commitment. The state institutions for the insane are divided into three classes: (1) Corporations for the indigent insane, and, where there is room, for other residents of the state (article 3, § 40, Insanity Law [Consol. Laws, c. 27]). These are specifically enumerated in the law. (2) Matteawan State Hospital, used for the custody and care of the insane committed to it by courts of criminal jurisdiction, or transferred thereto by the State Commission in Lunacy, and for convicted persons who may be declared insane while undergoing sentence of one year or less or for a misdemeanor, and for female convicts (article 5, Id.). (3) Dannemora State Hospital, used to confine and to care for male prisoners who are declared insane while confined in a state prison or a reformatory, or while serving a sentence of more than a year (article 6, Id.). The Legislature is the successor of the crown of England as parens patriæ in the case of idiots and of lunatics. The Late Corporation, etc., v. United States, 136 U. S. 1–56 et seq., 10 Sup. Ct. 792, 34 L. Ed. 478. But Thaw is not regarded as merely an insane ward of the state, the parens patriæ, but as one tried for a crime, acquitted because insane, yet committed by the trial court because insane in that his insanity would make him, if set free, a danger to the public peace and safety. The state does not act as parens patriæ alone, but as the possessor of the police power. And he must remain where he was committed. The insanity law provides for transfers in certain specified cases, but not in such a case as is this one. Section 91 permits transfers in cases of emergency. Sections 118 and 148 regulate other transfers, but not from one insane asylum to another. Section 122 authorizes transfers from state hospitals to Matteawan, but the law is silent on the subject of transfers from Matteawan. This silence may well be ascribed to

the fact that, as we have seen, this institution is set apart by the statute for inmates of the status which I have described, and there is no place for such an inmate in any other of the institutions whose use is also specifically prescribed by statute.

It is to be remembered that the question up for consideration is the power of transfer, and the complaint of maladministration and misconduct was entertained by the Special Term with an eye to transfer. If the charges were true, although they would furnish no ground for a transfer, they could afford cogent reasons for drastic measures that would insure better men and improved methods in that institution. By the authority of the state Constitution (article 8, §§ 11, 15), the Legislature has made a State Commission in Lunacy (chapter 32, Laws 1909, based upon chapter 545, Laws 1896), and has set it over the system of state institutions for the insane. This commission is charged with the execution of the laws relating to the custody, care, and treatment of the insane, to examine all institutions provided for the insane, "and inquire into their methods of government and the management of all such persons therein," into the condition of the buildings and grounds, and into all matters relating to management. It has free access to the property, books, and papers of all institutions. Those serving in such institutions must give the commission all information. It may appoint a competent person to investigate any institution for the insane as thoroughly and exhaustively as in its discretion may seem necessary. It has oversight of the state hospitals, the control of all property, and must see that the purposes of the state are carried into effect by their managers. It must at least visit every state institution twice a year, when a thorough search and examination are required in detail by the statute as to the administration, the food supply, and the treatment of patients. Section 92 provides:

"When the commission has reason to believe that any person adjudged insane is wrongfully deprived of his liberty, or is cruelly, negligently or improperly treated, or inadequate provision is made for his skillful medical care, proper supervision and safe keeping, it may ascertain the facts, or may order an investigation of the facts by one of its members. It, or the commissioner conducting the proceeding, may issue compulsory process for the attendance of witnesses and the production of papers, and exercise the powers conferred upon a referee in the Supreme Court. If the commission deem it proper, it may issue an order directed to any or all institutions, directing and providing for such remedy or treatment, or both, as shall be therein specified. If such order be just and reasonable, and be approved by a justice of the Supreme Court, who may require notice to be given of the application for such approval, it shall be binding upon any and all institutions and persons to which it is directed, and any wilful disobedience of such order shall be a criminal contempt and punishable as such. Whenever the commission shall undertake an investigation into the general management and administration of any institution for the insane, it may give notice to the Attorney General of any such investigation, and the Attorney General shall appear personally or by deputy and examine witnesses who may be in attendance. The commission, or any member thereof, may at any time visit and examine the inmates of any county or city alms-house, to ascertain if insane persons are kept therein."

It does not appear that there has been any invocation of this state commission. Under such circumstances, I think that the Supreme Court could well, in the exercise of its sound discretion, dismiss any

application that rests upon complaint against internal administration upon the ground that there had been no application to the state commission, which is clothed with full authority in the premises, and therefore that such body had not been afforded opportunity "to exert its administrative functions." See Baltimore & Ohio R. R. Co. v. Pitcairn Coal Co., 215 U. S. 493, 30 Sup. Ct. 164;[1] People ex rel. Linton v. B. H. R. R. Co., 172 N. Y. 90, 64 N. E. 788; see, too, People ex rel. Bd. Charities v. N. Y. Soc. P. C. C., 161 N. Y. 238, 55 N. E. 1063. My conclusion in no way denies the visitorial power. of the Supreme Court.

The order should be reversed, with $10 costs and disbursements, the order of reference should be vacated, and the application should be denied, with costs. All concur.