(158 App. Div. 571.)

## In re THAW.

(Supreme Court, Appellate Division, Second Department. October 31, 1913.)

1. ASYLUMS (§ 5*)—CONFINEMENT—REGULATION—CONSTITUTIONAL AND STATUTORY PROVISIONS.
Under Const. art. 8, §§ 11, 12, creating a commission in lunacy, and Insanity Law (Laws 1909, c. 32 [Consol. Laws 1909, c. 27]) §§ 6, 9, 92, 125, 111, prescribing the powers of such Commission and the rules governing the inmates of state asylums, the state did not delegate its prerogative powers over lunatics to the Supreme Court but retained the right to regulate the custody of them for itself through its Commission, superintendent of prisons, and other supervising officers, and the Supreme Court is without jurisdiction to order that an inmate of the State Hospital at Matteawan be permitted to consult his attorneys privately, contrary to the rules of that institution adopted by the superintendent under the authority given by Insanity Law (Laws 1909, c. 32 [Consol. Laws 1909, c. 27]) § 111.

[Ed. Note.—For other cases, see Asylums, Cent. Dig. § 4; Dec. Dig. § 5.*]

2. ASYLUMS (§ 5*)—CONFINEMENT—CONSULTATION WITH ATTORNEYS.
Evidence *held* not to justify the granting of an order to permit an inmate of the State Hospital at Matteawan to consult his attorneys privately, even if the court had jurisdiction to make such an order.

[Ed. Note.—For other cases, see Asylums, Cent. Dig. § 4; Dec. Dig. § 5.*]

3. ASYLUMS (§ 5*)—REGULATIONS—CONSULTATION WITH ATTORNEYS—ORDER OF COURT—PARTIES.
Where the order to show cause upon an application by an inmate of the State Hospital at Matteawan for permission to consult his attorneys privately was addressed only to the Superintendent of State Prisons and the acting superintendent of the hospital, and the State Lunacy Commission was not made a party thereto, the application should be denied.

[Ed. Note.—For other cases, see Asylums, Cent. Dig. § 4; Dec. Dig. § 5.*]

Appeal from Special Term, Dutchess County.

Application by Harry K. Thaw for an order permitting him, while an inmate in the State Hospital at Matteawan, to confer privately with his attorneys and with his mother. Order granted as to the attorneys but denied as to the mother, and both parties appeal. Order reversed, and motion denied in all respects.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and STAPLETON, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

William Vanamee and Henry Hirschberg, both of Newburgh, William A. Stone, and A. H. F. Seeger, of Newburgh, for Harry K. Thaw.

Franklin Kennedy, Deputy Atty. Gen., of Albany, for the People.

JENKS, P. J. These are cross-appeals from an order of the Special Term. There is a rule and regulation of the State Hospital at Matteawan that patients may see their relatives or their personal attorneys on any day of the week between the hours of 2 and 5 p. m. except Sundays and legal holidays, but such visits must be made in the presence of one of the assistants or attendants of the institution. The rule is of uniform application to the 817 inmates of the hospital. The Special Term upon motion ordered the Superintendent of State Prisons and the acting superintendent of this hospital to permit certain attorneys at law, together or any one of them, to confer privately with Mr. Thaw, an inmate of this hospital, in a room to be assigned for that purpose, not oftener than twice a week and not longer than two hours at a time, but not on any day when visitors were excluded by rule of the institution, and denied permission to Mr. Thaw to see his mother without the presence of an attendant.

[1] It is not contended that specific authority is vested in the Supreme Court to make such rules or regulations, or to annul, to abrogate, or to amend them, or that the court is clothed with any right of direct summary review of them. But the court avowedly asserted jurisdiction upon this proposition:

"Thaw was committed to the hospital by this court, which also has the power to discharge him, upon proof that his discharge would not be dangerous to the public peace and safety; and, being thus in the custody and under the control of the court, I think the court has the power to make any order in respect to his treatment while in confinement, not inconsistent with any reasonable rule or regulation of the hospital or the Prison Department of this state."

It seems to me that the rule made by the court is "inconsistent" in that it is contrary and even contradictory to the present rule, which it may be observed provides for interviews with attorneys. Mr. Thaw was not committed by the court in the exercise of its jurisdiction over the person and property of an incompetent by the prescribed procedure therefor but pursuant to section 454 of the Code of Criminal Procedure, and he is held, not as the ward of the court subject to its direction, but by the state itself in its own public institution erected and maintained by the state in the exercise of its prerogative as parens patriæ and as the possessor of the police power. Matter of Thaw, 138 App. Div. 91, 93, 94, 122 N. Y. Supp. 970. He then is the ward of the state, not of the Supreme Court.

It has been pointed out heretofore that our law respecting idiots and insane persons is derived from the law of England in that the care and custody of such persons were a part of the prerogative of the sovereign, and that:

"On our separation from Great Britain at the time of the Revolution, so much of the law as formed a part of the King's prerogative which was applicable under our form of government was vested in the people of the state

and by legislative enactments was transferred to the chancellor," etc. Sporza v. German Savings Bank, 192 N. Y. 8, 84 N. E. 406; Church of Jesus Christ v. United States, 136 U. S. 1, 51, 56, et seq., 10 Sup. Ct. 792, 34 L. Ed. 478; Matter of Thaw, 138 App. Div. 91, 122 N. Y. Supp. 970.

While it is entirely true that the present Constitution of New York, adopted in 1894, continues the Supreme Court "with general jurisdiction in law and in equity," this provision is not to be read as a devolution wholly and exclusively upon the Supreme Court of the prerogative of the state as parens patriæ and of the police power in the premises. The same instrument, by section 11 of article 8, provides that the Legislature shall provide for a state commission in lunacy which *"shall visit and inspect* all institutions, either public or private, used for the care·and treatment of the insane"; and section 12 provides for the appointment of the Commission by the Governor by and with the consent of the Senate. The Legislature enacted the Insanity Law providing for such Commission and clothed it with broad powers of visitation and with ample powers to make such visitation both practical and effective. See sections 6, 9, 92, of chapter 32, of the Laws of 1909; In re Thaw, supra, 138 App. Div. 94, 95, 122 N. Y. Supp. 970. And the Legislature has provided, by section 125 of the Insanity Law:

"Communications with Patients. No person not authorized by law or by written permission, from the Superintendent of State Prisons shall visit the Matteawan State Hospital, or communicate with any patient therein without the consent of the medical superintendent; nor without such consent shall any person bring into or convey out of the Matteawan State Hospital any letter or writing to or from any patient; nor shall any letter or writing be delivered to a patient, or if written by a patient, be sent from the Matteawan State Hospital, until the same shall have been examined and read by the medical superintendent or some other officer of the hospital duly authorized by the medical superintendent. But communications addressed by such patient to the county judge or district attorney of the county from which he was sentenced, shall be forwarded, after examination by such medical superintendent, to their destination."

And the rule thus modified by this order, as to a single inmate, was made pursuant to section 111 of the Insanity Law, that provides:

"The superintendent of state prisons, subject to the approval of the State Commission in Lunacy, shall make by-laws and regulations for the government of the hospital and the management of its affairs."

Any confusion may perhaps be cleared away by reference to the law of England, the source of our law. The Crown acquired wardship of the lands and of persons of unsound mind to the exclusion of the lord probably in the reign of Henry III. The jurisdiction of the chancellor rested "upon two bases": First, the share which he took in issuing writs of inquiry into the alleged insanity, the procedure being a part of the common-law jurisdiction of the Court of Chancery; second, the express delegation by the Crown to himself personally. Holdsworth, A History of English Law, p. 242. And, as Holdsworth points out, such delegation could have been made equally to any other great officer of state, and in fact such jurisdiction was exercised by the Court of Wards while in existence. As we have seen, supra, "so much of the law as formed a part of the King's prerogative * * * was

vested in the people of the state," who, "by legislative enactments," transferred it to the chancellor, etc. Sporza v. German Savings Bank, supra. This transference of the prerogative was, like that of the English Crown, an express delegation by our sovereign people to our chancellor personally and could have been transferred to another officer of the state; e. g., the Attorney General. I think, then, that the state has not delegated its prerogative to the Supreme Court in this instance, but in exercise thereof it keeps Thaw in its own custody, and that such custody and the incidents thereof are regulated by the state, acting through its State Commission in Lunacy, its Superintendent of Prisons, and its other specified officers to whom certain powers of administration are specifically delegated by statute. And no power like that exercised in the premises is delegated to the Supreme Court with respect to such administration, nor is that court vested with any visitorial power that enables it to dispense with the rules or to change them in a summary way.

[2] Even conceding that the court had jurisdiction in the premises, yet I think that the order should not stand. For the learned court says in discussion:

"Such a general rule, as I have already said, seems proper and necessary; but it should be relaxed in the case of an inmate who has need of the advice and services of a lawyer."

But then the court proceeds:

"The motion papers do not disclose the exact nature of the legal matters concerning which counsel for Mr. Thaw now desire to consult with him; but it is alleged that they have matters in charge for him besides the question of his discharge from custody; and that it is necessary for them to confer with him in respect thereto."

There is, then, no specific exigency apparent. On the other hand, the affidavit of the acting superintendent of the hospital shows that there are 817 patients in the institution, which is maintained exclusively for the custody of insane persons committed to the institution by courts of criminal jurisdiction or transferred thereto by the State Commission in Lunacy, and that the most dangerous class of insane persons are confined therein. The said affiant further deposes that, before he became acting superintendent, this regulation was relaxed in the case of Mr. Thaw, who was permitted to see privately almost any person who came to see him; and the affiant details episodes with which the observers of current events are more or less familiar, which resulted more or less in matters of "public scandal," to use affiant's own words. And it is his opinion that the activities resulting therefrom have been a great detriment to the proper discipline, welfare, and organization of the institution. And the affiant further points out that private communication with patients would permit the smuggling of dangerous weapons, poisons, or matches into the institution, as experience has shown. He closes his affidavit with these words:

"The complaint of Thaw seems to be that he is made a part of this organization and subjected to the same rules and method of life as the rest of the patients in the institution. To permit one patient such as Thaw to disregard and violate the general rules of the institution governing all the other

inmates and accord him a method of life peculiar to himself would result in the dissolution of the organization, which can scarcely be contemplated."

[3] The order to show cause was addressed only to the Superintendent of State Prisons and the acting superintendent of the hospital; none intervened; and thus it appears that the State Lunacy Commission was not made a party to the proceedings. Aside from every other reason, I think that we might well reverse this order for the omission of the procedure indicated in Matter of Thaw, supra, where this court concluded:

"Under such circumstances I think that the Supreme Court could well, in the exercise of its sound discretion, dismiss any application that rests upon complaint against internal administration upon the ground that there had been no application to the State Commission, which is clothed with full authority in the premises, and therefore that such body had not been afforded opportunity 'to exert its administrative functions.' See Baltimore & Ohio R. R. Co. v. Pitcairn Coal Co., 215 U. S. 493, 30 Sup. Ct. 164, 54 L. Ed. 292; People ex rel. Linton v. B. H. R. R. Co., 172 N. Y. 90, 64 N. E. 788. See, too, People ex rel. Board of Charities v. N. Y. Soc. P. C. C., 161 N. Y. 233, 55 N. E. 1063. My conclusion in no way denies the visitorial power of the Supreme Court."

Inasmuch as I think that the Supreme Court was impuissant in the premises, I advise that the order be reversed, without costs, and the motion be in all respects denied, without costs. All concur.