# APPELLATE DIVISION

#### OF THE

# SUPREME COURT

#### OF THE

## State of New York.

---

GERALD MORRELL, Respondent, *v.* BROOKLYN BOROUGH GAS
COMPANY, Appellant. (Appeal No. 1.)

Second Department, January 7, 1921.

**Gas and electricity — suit to restrain gas company from enforcing
increased rates imposed without authority of Public Service Com-
mission — order granting injunction pendente lite affirmed and
parties left to trial.**

In a suit by a customer to restrain a gas company from enforcing rates
claimed by said company to have been fixed by it, independent of the
Public Service Commission after the statutory rate had been adjudged
confiscatory, and to have such rates declared to be unreasonably com-
pensatory and void, *held*, that an order of the Special Term granting an
injunction *pendente lite* should be affirmed so that the issues arising
between the parties may be determined by trial and not on affidavits.

BLACKMAR, J., and JENKS, P. J., dissent, with opinion.

APPEAL by the defendant, Brooklyn Borough Gas Company,
from an order of the Supreme Court, made at the Kings Special
Term and entered in the office of the clerk of the county of
Kings on the 27th day of September, 1920, granting an injunc-
tion *pendente lite.*

Defendant manufactures and sells gas in the thirty-first
ward of the borough of Brooklyn. The complaint charged
that notwithstanding the provisions of chapter 48 of the

Consolidated Laws regarding gas rates, the Public Service Commission of the State of New York for the First District, on July 2, 1920, had made and issued an order to defendant in the following terms:

" I. That the maximum price to be charged by the Brooklyn Borough Gas Company for gas shall be as follows:

"(a) On and after the date of this order, to and including July 31, 1920, $1.15 per thousand cubic feet of gas sold and delivered consumers.

" (b) On and after August 1, 1920, to and including July 31, 1921, $1.40 per thousand cubic feet of gas sold and delivered to consumers, except as hereinafter provided.

" II. That said Brooklyn Borough Gas Company be and it hereby is authorized and required not later than October 1, 1920, to change its standard from its present 22 candle power standard to the British Thermal Unit (B. T. U.) standard, the number of heating units to be furnished to be not less than 525 B. T. U.'s per thousand cubic feet of gas manufactured, distributed and sold, which British Thermal Unit standard is hereby fixed by the Commission."

The complaint set forth that such order was beyond the power of said Commission, in that it could not fix a rate in excess of the maximum allowed by statute, and that the one dollar and forty cent rate is unreasonable, excessive and exorbitant, and further that after such advance in rate it had no power to change the standard of quality fixed by the statute (Laws of 1906, chap. 125) to a British thermal unit standard of 525 heat units per 1,000 cubic feet.

It further alleged: " That the plaintiff is informed and verily believes that the said defendant threatens and is about to enter the plaintiff's premises to change the meter to conform to the rate of $1.40 per thousand cubic feet. That should the plaintiff resist the officers and agents of the said defendant in so doing, and in any way endeavor to prevent the said trespass by physical force the said plaintiff will, under Section 66* of the Transportation Corporations Law of this State become liable to the payment of a heavy fine, besides suffering indignities to his person and damage to his property."

* *Sic.*  See § 64.— [REP.

Also that unless said order be declared invalid and nugatory, consumers of defendant's gas would institute a multiplicity of actions.

There were also submitted affidavits of seven other consumers of gas furnished by defendant, who, uniting in plaintiff's prayer for injunction, asked plaintiff to sue for the benefit of each and all of them, under section 448 of the Code of Civil Procedure, to which plaintiff had assented, and thereupon he prayed that relief be granted also on behalf of such other persons.

The opposing affidavit sworn to August 2, 1920, by defendant's acting manager, referred to various proceedings in defendant's suit against the Public Service Commission, including a judgment entered on the report of former Justice HUGHES as referee on August 13, 1918, and further considered by this court in *Public Service Commission* v. *Brooklyn Borough Gas Co.* (189 App. Div. 62). After setting out the increasing cost of oil, the affiant concluded: " The rate of $1.40 allowed by the Commission is less than a reasonable and compensatory rate under the new oil contract. The reasonable and compensatory rate would be at least $1.55. Deponent attended all the public hearings held by the Commission preceding the order allowing $1.40 maximum. The plaintiff was not present at any time and neither was any other consumer present."

Defendant's brief states that the argument was had on August fourth. At the final submission on August tenth, the acting manager presented a second affidavit verified on that day, which stated that " Defendant fixed a rate of $1.40 for itself entirely independently of the permission to do so granted by the Commission order. On July 20, 1920, defendant, on its own authority, promulgated, fixed, made and established a rate of $1.40 per 1000 cubic feet for all private consumers, to be charged and enforced on and after August 1st, 1920."

It stated that defendant had filed with the Commission schedules showing such rate, upon which " the Commission allowed the change of rate from $1.15 to $1.40 on August 1st, 1920, without requiring thirty days' notice and publication as also provided in said subdivision of said section."*

---

* See Public Service Commissions Law, § 66, subd. 12, as amd. by Laws of 1920, chap. 542.— [REP.

An injunction (conditional on plaintiff's filing a bond for $500 to pay any judgment against him) was granted, restraining defendant and its servants from entering plaintiff's premises to change the meter so as to increase the rate over that measured before August 1, 1920, also that defendant refrain from collecting from plaintiff any rate in excess of one dollar and fifteen cents per 1,000 cubic feet. (Reported *Morrell v. Brooklyn Borough Gas Co.*, 113 Misc. Rep. 65.) Defendant appealed to this court. When this motion for injunction was submitted, the defendant had not answered, but before it was granted defendant demurred to the complaint, which demurrer is the subject of the appeal in *Morrell* v. *Brooklyn Borough Gas Co., No. 3* (195 App. Div. 899).

*Edward M. Bassett* [*Wilson W. Thompson* with him on the brief], for the appellant.

*Judson Hyatt* [*John P. O'Brien, Corporation Counsel,* and *Gerald Morrell* with him on the brief], for the respondent.

Putnam, J.:

Ordinarily this court does not review the discretion of the Special Term in granting or refusing an injunction *pendente lite,* on appeal from the order, but will leave the parties to the trial. (*Smith & Sons Carpet Co.* v. *Ball,* 137 App. Div. 100; *Duryea* v. *Auerbach,* 164 id. 44; *Ginsburg* v. *Woolworth Co.,* 176 id. 882.) Here, however, are questions of law that seem to make an exception to the ordinary rule upon such appeals.

The powers of the Public Service Commission to sanction an increase of rate beyond that authorized by statute have always been restricted to the statutory rates. The original Public Service Commissions Law (Laws of 1907, chap. 429, § 72) conferred the rate-making power to fix the maximum price for gas by the words "within lawful limits." In the present act the matter was stated more clearly by an amendment inserting the term "not exceeding that fixed by statute to be charged by such corporation or person, for the service to be furnished." (Consol. Laws, chap. 48 [Laws of 1910, chap. 480], § 72, as amd. by Laws of 1920, chap. 542.) In 1910, the date of the present law, improvements in gas production pointed to lower rates, and as

said by COLLIN, J.: " The Legislature evidently intended to retain unto itself the power of fixing rates exceeding those fixed as the greatest by statutes." (*People ex rel. Municipal Gas Co.* v. *P. S. Comm.*, 224 N. Y. 156, 166.) Last year Mr. Justice PAGE declared: " Experience has shown that the forecast of the future was at fault; that it would have been wiser and more in keeping with the purposes of the act as originally enacted if the power of the Public Service Commissions had not been thus limited." (*Bronx Gas & Electric Co.* v. *Public Service Comm.*, 190 App. Div. 13, 22.) Writing on December 19, 1919, possibly with an eye to the approaching legislative session, he added: " This court, therefore, expresses the hope that such limitation may be removed to the end that such flexibility be given to the operation of the statute that the Commissions may be open to the determination and adjust-- ment of conflicting claims of consumers and the companies as to what are reasonable rates, fair both to the companies and to the public, at all times and under all circumstances, as was originally intended." (p. 22.) Although that court took the view that the Commission could authorize a gas rate above the statute maximum, the contrary has been decided in this department. (*Public Service Comm.* v. *Brooklyn Borough Gas Co.*, 106 Misc. Rep. 549; affd., 188 App. Div. 935. See, also, 189 App. Div. 62, 67, 74.)

After the judgment entered on the Hughes report, the statute commanding the eighty-cent rate is unenforceable as to this particular defendant. (See Laws of 1906, chap. 125, as amd. by Laws of 1916, chaps. 604, 612, and. Laws of 1917, chap. 666.) Yet such findings and the judgment thereon did not destroy the statute, which still exists as a restraint upon the Commission. And this rests on a sound distinction. To hold a rate confiscatory is merely a finding that as to a particular manufacturing plant the enforcement of a fixed rate with the conditions of gas production and distribution, would deprive the company of property without due process of law. (See U. S. Const. 14th Amdt. § 1; State Const. art. 1, § 6.) Such conditions are not merely those of operating cost and adequate return, but proof of such a fair and continued practical trial of the working of the existing rate that proves upon experiment its inadequacy.

But there is no similar way to enlarge the delegation of this rate-making power. The Legislature alone can do that. Courts cannot supply that which the Legislature has withheld. (*Matter of Quinby* v. *Public Service Comm.*, 223 N. Y. 244, 264.) Doubtless this was the view that led to the defendant's second affidavit in which it took a final stand wholly independent of the Commission.

Had it been otherwise, and this advance been regularly made under section 72 of the Public Service Commissions Law, the proper remedy would be by certiorari, and not by this form of equity suit. But the rate of one dollar and forty cents is now acknowledged as an independent increase. Such advance deserves that full investigation that can only be had through a trial. We cannot say that it was any error of discretion to preserve the *status quo*, where the defendant is fully protected by security. Even if plaintiff sued entirely alone, he would have a standing to contest the exaction of rates which are unfair or discriminatory. (*Armour Packing Co.* v. *Edison El. Illuminating Co.*, 115 App. Div. 51; *Richman* v. *Consolidated Gas Co.*, 114 id. 216.) We, therefore, do not depart from the ordinary practice to leave the parties to a trial, rather than to dispose of these doubtful questions upon affidavits.

The order, therefore, should be affirmed, with ten dollars costs and disbursements.

MILLS, J., concurs; BLACKMAR, J., reads for reversal, with whom JENKS, P. J., concurs.

KELLY, J.:

I concur in the affirmance of the order granting injunction *pendente lite* but for reasons which are not entirely in accord with those expressed in the prevailing opinion. In view of the fact that the statutory rates fixed for defendant by the Legislature have been declared confiscatory and void, I think the power to fix a reasonable rate devolved upon the Public Service Commission after due hearing and investigation. I think this was the intention of the Legislature in such case. (*People ex rel. Village of S. Glens Falls* v. *P. S. Comm.*, 225 N. Y. 216.) The consumers of gas were not left solely at the mercy of the defendant company. (*Town of North Hempstead*

v. *Pub. Serv. Corp.*, 193 App. Div. 224; *Bronx Gas & Electric Co.* v. *Public Service Comm.*, 190 id. 13.)  It is the expressed policy of the State that the charges made by these public utility corporations shall be subject to supervision.  But there appears to be some confusion of opinion as to the effect of the decision of the Court of Appeals in *People ex rel. Municipal Gas Co.* v. *P. S. Comm.* (224 N. Y. 156), and it is also said that the judgment in the case tried before Judge HUGHES determined that the Public Service Commission was without power to fix rates.  (*Public Service Comm.* v. *Brooklyn Borough Gas Co.*, 189 App. Div. 62, 72.)  On the other hand, the gas company defendant in the case at bar made its application to the Public Service Commission for the rates complained of here by permission of the Appellate Division in the First Department.  (*Brooklyn Borough Gas Co.* v. *Public Serv. Comm.*, 190 App. Div. 901.)  Out of this confused situation arises the controversy between the plaintiff and defendant here.  I would doubt the correctness of the order appealed from were it not for the fact that the printed papers show that before the learned judge at Special Term the defendant gas company in the affidavit of its manager appeared to concede that the Public Service Commission had no authority to fix the rate, and in its points before this court there is a like concession.  And the gas company appears to rely upon rates fixed " entirely independently of the permission to do so granted by the Commission order.  On July 20, 1920, defendant, on its own authority, promulgated, fixed, made and established a rate," etc.  I cannot agree that the defendant had such authority.  In my opinion the situation presented in the papers requires the affirmance of the order granting the preliminary injunction so that the rights of the parties may be established by prompt trial.

MILLS, J., concurs.

BLACKMAR, J. (dissenting):

The complaint alleges that the Public Service Commission has made an order that on and after August 1, 1920, to and including July 31, 1921, the maximum price to be charged by the defendant for gas shall be one dollar and forty cents per

1,000 feet for gas sold and consumed, except that the defendant is authorized, not later than October 1, 1920, to change the standard of quality. As the action was brought before this last-mentioned date, the change of standard is not before us. The complaint goes on to allege in substance that the order of the Public Service Commission is void; that the rate prescribed by statute has been adjudged confiscatory and void as to defendant; that defendant is attempting to put the rate prescribed by the Public Service Commission in force, and that the rate is unreasonable and unduly compensatory to defendant. There is a demand for a judgment which if granted will affect the schedule of rates to all defendant's consumers.

It is claimed that the decision of the Court of Appeals in *People ex rel. Municipal Gas Co.* v. *P. S. Comm.* (224 N. Y. 156) establishes as matter of law that the order of the Public Service Commission is void in that it authorizes a charge in excess of the rate fixed by statute, and may be disregarded in a collateral attack. That decision was rendered in a case where there was a statutory rate fixed and in force, and the court held that the power of the Public Service Commission was limited, by the terms of the statute conferring it, to fixing rates below the statutory limit. But in the case at bar it appears on the face of the complaint that in a suit in equity the statutory rate has been adjudged confiscatory and void as to this defendant. Undoubtedly, as is said in the prevailing opinion herein, the statute still exists; but the effect of the judgment is that it is void as to the defendant. Such being the case, I think that the decision in the *Municipal Gas Company* case does not apply. If it does, we are driven to the conclusion that, as to the defendant, the whole conprehensive plan of State control of rates through the Public Service Commission has broken down. It is not necessary so to hold; it is inconsistent with the declared policy of the State so to hold; and in my opinion it is error so to hold.

In order to hold that the Commission had power to fix the rate in question it is not necessary to do violence to the words of the statute. I proceed within its letter. The statute empowers the Commission to fix the maximum price of gas " not exceeding that fixed by statute *to be charged by such*

*corporation.*" (Public Service Commissions Law, § 72, as amd. by Laws of 1920, chap. 542.) Since the rate of eighty cents has been declared confiscatory and the court has adjudged that it is not applicable to this defendant, there is no price fixed by statute to be charged by the corporation.

But whatever we may think of the power of the Commission to fix a rate in excess of eighty cents, yet the Commission had general jurisdiction over the defendant company and over the subject-matter. It certainly had power to fix a rate within the limits of the statute. If it was not warranted in exceeding eighty cents, this was an error in law and should be corrected by certiorari. The Public Service Commissions Law presents a comprehensive plan whereby all questions of reasonableness of charges of public service corporations where the Legislature has not directly acted, shall be settled by Commissioners whose special knowledge in this field of operation and whose facilities for investigation render them more fitting depositories of that power than the courts. Their decisions may be directly reviewed by certiorari. But they cannot be attacked collaterally unless entirely void as beyond the power of the Commission. If I am right, the Public Service Commission which fixed the price in question acted within its general jurisdiction, and if, contrary to my opinion, it erred as fixing too great a rate, that should be corrected by direct review and not disregarded as void.

The subject-matter of this action concerns the charge to the plaintiff alone. He does not represent the public and can raise no question of the validity of the general schedule of charges. As has been seen, this power has been conferred upon the Public Service Commission. The allegation of his complaint is that the rate is " unreasonable, excessive and exorbitant, and is more than sufficient to reasonably compensate the said defendant for its public service during a period when commodities necessary to comfortable existence should be furnished to the consumer at as low a rate as possible." He prays, among other things, " That it be decreed that the rate of $1.40 per thousand cubic feet for illuminating gas is, as to this defendant, unreasonably compensatory and void." It is manifest that the claim of the plaintiff is that the defendant is making too much money. But with this the plaintiff has no

concern.   As between the plaintiff and the defendant the only question is whether one dollar and forty cents per 1,000 cubic feet is unreasonable for the service rendered.   Whether it is compensatory to the defendant is not the issue.   That inquiry is pertinent only when a public service corporation claims that a rate fixed by statute or by the Commission is confiscatory. An essential element of such inquiry is whether the statute permits reasonable compensation to the corporation, which naturally involves the financial return to the company in its operation under the prescribed rate.   Betweeen the individual and the company no such questions arise.   (*Cotting* v. *Kansas City Stock Yards Co.*, 183 U. S. 79; *Canada Southern Railway Co.* v. *International Bridge Co.*, 8 App. Cas. 723.)   In the *Cotting* case Mr. Justice BREWER quotes from the English case (*supra*, 96), as follows: " It certainly appears to their Lordships that the principle must be, when reasonableness comes in question, not what profit it may be reasonable for a company to make, but what it is reasonable to charge to the person who is charged."

Prescribing a general rate for service is a legislative and not a judicial act.   It may be exercised by the Legislature directly or by an administrative body to which the power is delegated. In the absence of such regulation, the power to fix the charges is vested in the corporation itself; and although a question may arise as to the reasonableness of the charge, depending upon the service rendered, as between an individual and the corporation, such power never concerns the power of the corporation to establish a system of rates.   In the absence of such legislative regulation, the courts have no power to determine the question.   (*People ex rel. Linton* v. *B. H. R. R. Co.*, 172 N. Y. 90; *Honolulu R. T. Co.* v. *Hawaii*, 211 U. S. 282; *Northern Pacific Railroad* v. *Dustin*, 142 id. 492; *People* v. *N. Y., L. E. & W. R. R. Co.*, 104 N. Y. 58.)   The bill of complaint, concerning the plaintiff's rights only, furnishes no justification for this suit in equity.

If the order of the Public Service Commission is void, the defendant has the power to establish its own rates.   The presumption is that they are reasonable, and a mere allegation of the pleadings that they are unreasonable, without evidence to support it, does not justify an injunction.   In this record there is not a scintilla of evidence tending to show that the

rates are unreasonable, and yet the court at Special Term has upon this record granted an injunction and exercised legislative functions of prescribing a maximum rate, so substituting its judgment for that of the Public Service Commission and the defendant.

I think the order should be reversed and the motion denied.

JENKS, P. J., concurs.

Order affirmed, with ten dollars costs and disbursements.