NOAH SILBERBERG, Suing on Behalf of Himself and Others, Plaintiff, *v.* THE CITIZENS WATER SUPPLY COMPANY OF NEWTOWN, Defendant.

(Supreme Court, Queens Special Term for Motions, October, 1921.)

Injunction — water companies — rate increases — constitutional law — statutes — Greater New York Charter, § 472 — Transportation Corporations Law, § 81.

> Statutory provisions for a hearing upon notice with opportunity to offer proof are intended to secure " due process of law " and should find positive expression in any statute which purports to divest the individual of rights ordinarily incident to private ownership.
>
> The defendant, a corporation supplying the inhabitants of certain sections of Queens and an adjoining county with water, after notice to customers of its election to terminate agreements between it and them, established a new schedule of rates and charges — approximately an increase of fifty per cent over existing rates — but before the time fixed for the new schedule of rates to become effective, the commissioner of water supply, gas and electricity of the city of New York, acting under section 472 of the city charter, assumed authority to abrogate the increased rate and to re-establish the former schedule which

had been effective for fifteen years. Upon denying a motion for an injunction *pendente lite* in an action brought by a consumer on behalf of himself and all others similarly situated for a decree adjudging the increased rates and charges to be illegal and void and to enjoin the enforcement and the collection of the same or of any charge in excess of the old rates, and from the discontinuance of service to customers refusing to pay the new rates, *held:*

That section 472 of the Greater New York charter, which does not provide for a hearing upon notice with opportunity to offer proof having been declared unconstitutional because violative of the "due process of law" provision of the Constitution, the prohibitive order of the said commissioner was nugatory and defendant was justified in disregarding it.

The new rates established by defendant were *prima facie* reasonable, as in the absence of a schedule of rates fixed by a board or body so authorized by delegated authority, defendant under section 81 of the Transportation Corporations Law had power itself to promulgate reasonable rates.

Plaintiff was not entitled to the injunctive relief asked for on the ground alleged in the complaint that the increased charges were beyond the reasonable value of service furnished by defendant, in the absence of allegation of facts justifying the conclusion that *prima facie* the increased rates will produce an unreasonable compensation for the service rendered.

Plaintiff was not entitled to preliminary equitable relief on any ground, it appearing that over eighty per cent of the 20,000 families have paid at the increased rate for water supplied by defendant, who is responsible and can be made to refund to any individual having a grievance, any excess, if the increased rate be finally determined to be unreasonable.

Motion for an injunction *pendente lite.*

James B. Emerick, for plaintiff.

Ingraham, Sheehan & Moran, for defendant.

Faber, J. The defendant is a water company organized in 1893 under the Transportation Corporations Law, and supplying water to the inhabitants of certain sections of Queens and an adjoining county. In

August, 1905, the defendant established certain rates and charges for water supplied, which remained in effect until January 1, 1921. Prior to that date, however, and on November 20, 1920, the defendant notified its consumers of its election to terminate the agreements between it and them on December 31, 1920, and of the establishment of a new schedule of rates and charges, to become effective on and after January 1, 1921. The increase in the new rates was, approximately, fifty per cent. On December 23, 1920, the commissioner of water supply, gas and electricity, assuming to act under the provisions of section 472 of the charter, notified defendant not to attempt to put the new schedule of rates into effect, nor to threaten to collect the same, nor to refuse service to consumers who should refuse to pay the new rates. He further notified the defendant not to make any increased charge for water supplied to any of its consumers within the city of New York. Defendant was also notified that if it filed with the commissioner an application for permission to increase its rates, accompanied with a schedule thereof, the application would be heard on or after February 1, 1921, upon condition that thirty days' notice thereof was given to the consumers. Defendant acknowledged the receipt of this communication or order, but otherwise disregarded it and proceeded to make effective the new schedule of rates as specified in its notice to its consumers. The plaintiff brings this action on behalf of himself and all other consumers similarly situated, praying for a decree adjudging the said increased rates and charges to be illegal and void, and enjoining defendant from enforcing or collecting the same or any charge in excess of the rates existing on December 31, 1920, and enjoining the discontinuance of service to those con-

sumers who refuse to pay the new rates. And this is a motion for an injunction pending the trial.

I do not think the motion should be granted. Plaintiff contends: *First,* that the increased rates are illegal and void because they have never been permitted or approved by the commissioner of water supply, gas and electricity. Such approval, he claims, is required by section 472 of the charter. *Second,* that such rates are illegal and void because they would permit an excessive and unreasonable return upon defendant's investment; and, *Third,* that said increased rates are in excess of the reasonable value of the service rendered by the defendant to its consumers.

It has been decided in this court that section 472 of the charter, in so far as it authorized the commissioner arbitrarily to determine the rates to be charged by the defendant, is unconstitutional because violative of the due process of law provision of the Constitution. See *City of New York* v. *Citizens Water Supply Company,* N. Y. L. J. Aug. 19, 1921. This section does not provide for a hearing upon notice, with opportunity to offer proof. Counsel for the plaintiff suggests that possibly such provision may be implied for the purpose of giving the section constitutional validity, but it seems to me that provisions of this character, intended to secure to the individual due process of law, should find positive expression in any act which purports to divest the individual of rights ordinarily incident to private ownership. I do not think that the right of the individual to such procedure as will secure him in his constitutional rights should exist in inference and implication only, or be laboriously spelled from meager, uncertain and inadequate phraseology. A broad discretion in details of procedure may well be vested in the admin-

istrative officer or body; but the fundamental right to notice and a hearing should be conferred expressly by statute or at least be so plainly suggested by the language employed that the right may reasonably be said to have been incorporated into the act by necessary implication.  Other statutes, which confer regulatory and rate-making powers, so expressly provide. See Pub. Serv. Comm. Law, §§ 49, 72.  But so far as appears from the face of section 472, a hearing is a favor emanating from the commissioner and not a right in the defendant.  The favor may be accorded by the commissioner as a courtesy but may not be demanded by the individual as an undisputed right. Nevertheless, under this provision, the commissioner assumed authority to abrogate the increased rates and re-establish the former schedule.  Such was the effect of his prohibitive order of December 23, 1920. But these old rates were fixed by defendant in 1905. They have never been the subject of official investigation by the department of water supply, gas and electricity.  The commissioner was, therefore, equally without knowledge either as to the reasonableness of the old rates or the unreasonableness of the new rates. Nevertheless, he assumed authority to prohibit any increase over the old rates.  In legal effect this was equivalent to a determination, made arbitrarily and without investigation, that the old rates were reasonable.  Even if no notice whatever to the defendant were necessary, yet before determining that the old rate was a *present* reasonable rate, it was incumbent upon the commissioner to obtain from every available source sufficient information to enable him to take intelligent action.  *San Diego Land & Town Co.* v. *National City,* 174 U. S. 739, 751.  This he did not do. His action in demanding a continuance of the former rates was purely arbitrary and, in my opinion,

without statutory authority. The defendant was justified in disregarding the prohibitive order of the commissioner. In the absence of a schedule of rates, fixed by some board or body so authorized by delegated authority, and binding upon the defendant, the latter was empowered under section 81 of the Transportation Corporations Law to promulgate reasonable rates. *Morrell* v. *Brooklyn Gas Co.,* 195 App. Div. 1, dissenting opinion of Blackmar, J.; revd. by Court of Appeals, 231 N. Y. 398; *New York Interurban Water Co.* v. *City of Mt. Vernon,* 110 Misc. Rep. 281, 284; *City of Mt. Vernon* v. *New York Interurban Water Co.,* 115 App. Div. 658, 661; *Duitz* v. *Kings County Lighting Co.,* 115 Misc. Rep. 14; *Meara* v. *Citizens Waterworks Co.,* 110 id. 738, 739, 740. And the presumption is that the rates so established by the defendant are reasonable. In my opinion, therefore, the prohibitive order of the commissioner was nugatory and the rates established by the defendant are *prima facie* reasonable.

Plaintiff presents tables of statistics relating to the capital investment of defendant, the annual revenues received from all sources for preceding years and showing the increase per year over each preceding year both in amount and per cent. The purpose of these figures is to show that the increased rate would produce an " excessive and unreasonable " return upon defendant's actual investment. Defendant denies this and gives figures tending to show that its probable return for the ensuing year at the increased rates will not yield an excessive or unreasonable profit upon its investment. Of course this question cannot be decided upon affidavits but the various phases of it should be left to the trial.

In paragraph 11 of the complaint, plaintiff alleges that the increased charges are beyond the reasonable

value of the service furnished by the defendant. This, if proven, would entitle plaintiff to equitable relief. But the papers presented, aside from conclusions, disclose no facts which justify the allegation. At the most plaintiff's figures show that defendant may make large profits. On the contrary, defendant shows by its statistics that the estimated future return at the increased rate will not yield an unreasonable percentage of profit on the investment. I find no facts alleged justifying the conclusion that, *prima facie,* the increased rates will produce an unreasonable compensation for the service rendered. The plaintiff is not, therefore, entitled to an injunction *pendente lite* on this ground. And I do not think that he is entitled to preliminary equitable relief on any other ground. The defendant supplies upwards of 20,000 families. Over eighty per cent of these consumers have paid at the increased rates. Payment of the increase will be a trifling financial burden to the individual consumer. The defendant is responsible and can be made to refund the excess if the increased rate be finally determined to be unreasonable. I regard the trouble and expense to the individual of collecting from the defendant as a far lighter burden than would be cast upon the latter if it were compelled to collect from hundreds of consumers who may refuse to pay at the increased rate. Presumably, many of the consumers would have disappeared and some might be found to be insolvent. But the defendant may always be reached by the individual who has a grievance. The action may be tried within a few weeks and a final decision obtained upon the merits. Under all the circumstances, I think the motion should be denied.

Motion denied.