## HONOLULU RAPID TRANSIT & LAND COMPANY *v.* TERRITORY OF HAWAII, BY HEMENWAY, ATTORNEY GENERAL.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF HAWAII.

No. 412. Argued October 12, 1908.—Decided November. 30, 1908.

The business of a transportation company operating under a franchise is not purely private, but is so affected by public interest that it is subject, within constitutional limits, to the governmental power of regulation.

The power to regulate the operation of railroads includes regulation of the schedule for running trains; such power is legislative in character, and the legislature itself may exercise it or may delegate its execution in detail to an administrative body, and where the legislature has so delegated such regulation the power of regulation cannot be exercised by the courts.

The boundaries between the legislative and judicial fields should be carefully observed.

By §§ 833–871 of chap. 66 of the Rev. Laws of Hawaii, the legislature having vested the regulation of the railway company thereby incorporated in certain administrative officers, it is beyond the power of the courts to independently regulate the schedule of running cars by decree in a suit; and so held without deciding as to the power of the courts to review the action of the administrative officers charged by the legislature with establishing regulations.

18 Hawaii, 553, reversed.

THE facts are stated in the opinion.

*Mr. David L. Withington,* with whom *Mr. Aldis B. Browne, Mr. Alexander Britton, Mr. W. R. Castle* and *Mr. A. Perry* were on the brief, for appellant:

Equity has no jurisdiction. Mandamus and not injunction is the remedy to enforce a statutory obligation. *Walkley* v. *City of Muscatine,* 6 Wall. 481; *Supervisors* v. *Rogers,* 7 Wall. 175; *Rees* v. *City of Watertown,* 19 Wall. 107; *People* v. *Albany & Vermont R. Co.,* 24 N. Y. 261; *Shackley* v. *Eastern R. R. Co.,*

98 Massachusetts, 93; *Moundsville* v. *Ohio River R. R. Co.,* 37 W. Va. 92. *In re Lennon,* 166 U. S. 556, and *Chesapeake & Potomac Tel. Co.* v. *Manning,* 186 U. S. 238, discussed and distinguished.

That a railway company may be compelled by mandamus to perform its public duties specifically and plainly imposed by the franchise, and even to operate its road, has been held so many times that it seems to be unnecessary to cite further cases. *State* v. *Dodge City Ry. Co.,* 53 Kansas, 329; *S. C.,* 24 L. R. A. 564, and note; *State* v. *Bridgeton Co.,* 62 N. J. L. 592; *S. C.,* 45 L. R. A. 837, and note; *State* v. *Hartford & N. H. R. R. Co.,* 29 Connecticut, 583; *State* v. *Helena Power & Light Co.,* 22 Montana, 391; *San Antonio Street Ry.* v. *State,* 90 Texas, 520.

There is no ground for equitable relief. Whether a mandatory injunction can be obtained in Hawaii or not, equity will not interfere with the management of corporations or grant injunctions, except in clear cases and as a preventive measure against action which is likely to cause irreparable injury. *Brown* v. *Carter,* 15 Hawaii, 333, 350; *Wundenberg* v. *Markham,* 14 Hawaii, 167.

This action seeks to enforce a public right by the aid of an injunction, which is only done in a proper case for specific performance within the rules of equitable cognizance. The remedy is by mandamus, if the duty is specific; by *quo warranto,* if not. *Waianae Co.* v. *Bell Telephone Co.,* 6 Hawaii, 589.

An injunction does not lie to enforce a contract requiring continuous acts. 6 Pomeroy's Equity, 76.

The remedy in such a case is by mandamus or by proceedings in the name of the State for a forfeiture of the charter. A bill in chancery will not lie to enforce the specific performance of duties requiring continuous personal labor and care. *McCann* v. *South Nashville Ry.,* 2 Tenn. Chan. 773; *Marble* v. *Ripley,* 10 Wall. 358. And see *Northern Pacific R. R. Co.* v. *Dustin,* 142 U. S. 492, where the following cases are cited: *A., T. & S. F. R. R. Co.* v. *Denver & N. O. R. R. Co.,* 110

U. S. 667, 681, 682; *People* v. *N. Y., L. E. & W. Ry. Co.,*
104 N. Y. 58; *Commonwealth* v. *Eastern Ry. Co.,* 103 Massa-
chusetts, 254; *Commonwealth* v. *Fitchburg R. R. Co.,* 12 Gray,
180; *Ohio & Miss. Ry. Co.* v. *People,* 120 Illinois, 200; *S. C.,* 11
N. E. Rep. 347; *Nashville, C. & St. L. Ry. Co.* v. *State,* 137
Alabama, 443; *Page* v. *L. & N. R. R. Co.,* 129 Alabama, 237;
*State* v. *Helena Power & Light Co.,* 22 Montana, 391; *Mount
Pleasant Cemetery Co.* v. *Patterson &c. Ry. Co.,* 43 N. J. L.
505; *Florida Ry. Co.* v. *State,* 31 Florida, 452; *State* v. *Kansas
City Ry. Co.,* 51 La. Ann. 209; *Jones* v. *Newport News & M. V.
Co.,* 65 Fed. Rep. 736; *San Antonio Street Ry. Co.* v. *State,* 90
Texas, 525; *People* v. *Long Island Ry. Co.,* 39 Hun (N. Y.),
125; *Minnesota* v. *Southern Minnesota R. R. Co.,* 18 Minnesota,
40; *People* v. *Brooklyn Heights R. Co.,* 172 N. Y. 95; *S. C.,* 64
N. E. Rep. 788, and cases there cited.

Under § 36 of the franchise the Superintendent of Public
Works, with the consent of the Governor, is alone authorized
to institute proceedings.

This is a special remedy provided in a special act, compre-
hensive in its nature, to be set in motion by the officers specifi-
cally charged with duties in connection with this corporation
and the exercise of this franchise. *Bond* v. *Merchants' Tel.
Co.,* 5 Quebec Super. 445; *State* v. *Manchester Ry. Co.,* 62
N. H. 29; *State* v. *Mobile & Montgomery Ry. Co.,* 59 Alabama,
321; *Anonymous,* 2 Ld. Raymond, 989; *Antoni* v. *Greenhow,*
107 U. S. 769.

Section 7 imposes no such specific duty to run the cars on
any particular schedule as can be enforced by either manda-
mus or injunction.

The franchise reserves the power of controlling the discre-
tion of the appellant in regard to regulations concerning the
operation of the railroad to the Governor.

*Mr. Charles R. Hemenway,* Attorney General of the Terri-
tory of Hawaii, for appellee, submitted:

The equitable jurisdiction of the courts was properly in-

voked in this case. The fundamental difference between the remedies of injunction and mandamus is overlooked by appellant. In view of the facts alleged in the bill, and proved upon the hearing in this case, injunction was the proper remedy to seek in behalf of the public, and its relief was properly granted by the courts. The facts found show clearly the reasons for the granting of this relief, and show, too, a case proper for the intervention of equity.

Furthermore, when a corporation is acting or threatening to act in excess of its corporate power, or is misusing the franchise it possesses, to the injury of others, an injunction to restrain it is the proper remedy. *Grey, Attorney General,* v. *Greenville &c. Ry. Co.,* 60 N. J. Eq. 153, 158; *Chicago &c. Assn.* v. *People,* 60 Ill. App. 488, 496; *Attorney General* v. *Railway Cos.,* 35 Wisconsin, 425, 520, 523. See also *Craig* v. *People,* 47 Illinois, 487; *People* v. *Third Avenue Ry. Co.,* 45 Barb. 63; *People* v. *Albany Ry. Co.,* 11 Abb. Pr. 136; *Buck Mtn. Coal Co.* v. *Lehigh Coal Co.,* 50 Pa. St. 91; *Attorney General* v. *Patterson Ry. Co.,* 9 N. J. Eq. 526; *McNulty* v. *Brooklyn Heights Ry. Co.,* 66 N. Y. Supp. 57; *Volmer's Appeal,* 115 Pa. St. 166; *Frederick* v. *Groshon,* 30 Maryland, 436.

The English courts of chancery prevent by injunction violations of charter obligations at the suit of the public. *Attorney General* v. *London Ry. Co.* (1900), 1 Q. B. 78; *Attorney General* v. *Cockermouth Local Bd.,* L. R. 11 Eq. 172; *Ware* v. *Regents Canal Co.,* 3 De G. & J. 212; *Liverpool* v. *Chorley Waterworks Co.,* 2 De G., M. & G. 852; *Attorney General* v. *Mid. Kent Ry. Co.,* L. R. 3 Ch. 100.

Therefore, even though there may be a remedy by mandamus to compel appellant here to perform certain duties laid upon it, yet the mere existence of such a remedy is not sufficient to warrant the conclusion that equity cannot interfere to prevent in advance a company from performing some act or making some change in its system which would clearly violate both its duty at common law as a carrier and its duty under its charter to maintain a sufficient car service to meet

the public need and convenience. The facts disclosed here are so different from those involved in the numerous authorities cited by appellant as to make those authorities of little value in this case.

No absolute rule, as is contended for by appellant, can be laid down, but each case, of necessity, must be considered and determined on its merits.

The existence of a remedy at the suit of the Superintendent of Public Works for an annulment of the charter is not exclusive of the remedy invoked here. Some violations of charter obligations might warrant a forfeiture, but so harsh a remedy would be granted with great reluctance, and should be sought only when clearly necessary.

Under the franchise the company owed a specific duty to the public, enforceable through the courts. Section 7 of the franchise (§ 841, Rev. Laws) was properly construed by the territorial courts, and their construction was thoroughly consistent with the provisions as to executive control of regulations made by the company.

The local courts refused to accept the technical construction given these sections of the franchise by appellant which would limit them in meaning to such an extent as to give the public no redress through the courts for any act of the company's, but on the contrary correctly gave these sections a broad and comprehensive construction which would permit the public, which granted this franchise, to come into court and require by appropriate means a performance of corporate duty. This construction by the local courts is entitled to great weight in this court. *Kawananakoa* v. *Polyblank*, 205 U. S. 349; *Copper Queen Mining Co.* v. *Arizona*, 206 U. S. 474; *Kealoha* v. *Castle*, 210 U. S. 149, 153.

MR. JUSTICE MOODY delivered the opinion of the court.

The appellant, hereafter called the Transit Company, was incorporated by a law of the Territory of Hawaii. Chapter 66,

§§ 835–871, Revised Laws of Hawaii. The corporation was granted the right to construct and operate a street railway for a term of thirty years in the District of Honolulu. The character of the construction was, in part, expressly prescribed by the statute, and, in some details, left to be determined by the Transit Company, subject to the approval of the Superintendent of Public Works. Section 841 enacted that—

"The said association . . . shall at all times maintain a sufficient number of cars to be used upon said railway for the carriage of passengers as public convenience may require, and such other cars designed for the carriage of mails, parcels and goods as they may deem necessary."

It was provided that, after paying from the income certain charges, including a dividend of eight per cent on the stock, the excess of the income should be divided equally between the Territory and the stockholders, and that "The entire plant, operation, books, and accounts . . . shall from time to time be subject to the inspection of the Superintendent of Public Works." Section 868. In certain parts of the field of operation a maximum rate of fare was established by the statute, and in certain other parts it was left to the Transit Company to fix, subject to the approval of the Governor. It was provided by § 843, paragraph 4, that—

"The said association . . . shall make reasonable and just regulations with the consent and approval of the Governor regarding the maintenance and operation of said railway on and through said streets and roads; and the said association . . . failing to make such rules and regulations, the Superintendent of Public Works, with the approval of the Governor, may make them. All rules and regulations may be changed from time to time as the public interests may demand at the discretion of the Governor."

The railway was constructed and its operation was in progress. On certain streets of its line the Transit Company had been running cars at intervals of ten minutes. It proposed to discontinue this schedule and establish one with

somewhat longer intervals, and had applied to the Superintendent of Public Works for permission to lay the switches necessary to put the proposed schedule into convenient operation. Thereupon the Territory, on the relation of its Attorney General, brought, in one of the Circuit Courts of the Territory, a suit in equity, in which an injunction was sought to prevent the company from running the cars in question at less frequent intervals than ten minutes. In the bill it was alleged that the convenience of the public required that the ten-minute schedule should be maintained and continued. The respondent answered, issue was joined by replication, evidence was taken, and the court found as a fact that the public convenience required the maintenance of the ten-minute schedule. An injunction against the change was accordingly granted. Upon appeal to the Supreme Court of the Territory the judgment of the lower court was affirmed, and findings of fact made, including the finding that the public convenience required the continuance of the ten-minute schedule. The Transit Company then appealed here, upon the ground, which is well taken, that the amount in controversy was more than five thousand dollars.

The dispute between the parties is whether the courts of the Territory had jurisdiction in equity to issue the injunction. The Transit Company contends that no such jurisdiction existed, and, in the alternative, that if there was jurisdiction in the courts over the subject it could only be exercised by mandamus. We think it unnecessary to consider the latter proposition, and confine ourselves to a consideration of the broad question whether the court had power, by any form of proceedings, thus to regulate and control the operations of the company. The courts below based the right to issue the injunction upon § 841, correctly interpreting that section as imposing the general duty upon the Transit Company to operate as well as to maintain such cars as the public convenience require. The section, however, is not a specific direction to keep in force on the streets covered by the order

of the court a defined schedule, with cars running at named intervals, and the right of a court to enforce by injunction or mandamus such a schedule need not be considered. But the action of the court below went much farther than this, and farther than is warranted by any decision which has been called to our attention. In the absence of a more specific and well-defined duty than that of running a sufficient number of cars to meet the public convenience, the court, in this case, inquired and determined, as matter of fact, what schedule the public convenience demanded, on particular streets, and then, in substance and effect, compelled a compliance with that schedule. And this was done, though, as will be shown, the full power to regulate the management of the railway in this respect was vested by the statute in the executive authorities. In form the order of the court was a mere prohibition against a change of an existing schedule, but its substantial effect was to direct the Transit Company to operate its cars upon a schedule found to be required by the public convenience. The effect of the order is not changed by the fact that the schedule enforced by the order of the court is that upon which the Transit Company was then running its cars. The order of the court was not founded upon the consideration that the schedule was the one existing, although that was taken into account, but upon the fact that it was the one which the public convenience required. The question to be determined is, whether a court, not invested with special statutory authority nor having the property in its control by receivership, may, solely, by virtue of its general judicial powers, control to such an extent and in such detail the business of a transportation corporation. The question can be resolved by well-settled principles applicable to the subject. At the threshold the distinction between the case at bar and those cases where there is an enforcement of a specific and clearly defined legal duty must be observed. This distinction was drawn and acted upon in the case of *Northern Pacific Railroad* v. *Dustin,* 142 U. S. 492. In that case it appeared that the railroad com-

pany was incorporated by an act of Congress, with power to construct and operate a railroad from Lake Superior to Puget Sound, with a branch to Portland. The charter directed that the railroad should be constructed "with all the necessary . . . stations." The Territory of Washington filed in the territorial court a petition for mandamus to compel the railroad company to erect and maintain a station at Yakima City and to stop its trains at that point. The petition alleged, and the jury found, facts which warranted the inference that a station at Yakima City was desirable and necessary for the proper accommodation of traffic. Thereupon a writ of mandamus issued as prayed for and upon appeal the judgment was affirmed by the Supreme Court of the Territory. Upon writ of error this court reversed the judgment. In the opinion of the court, delivered by Mr. Justice Gray, it was said: "A writ of mandamus to compel a railroad corporation to do a particular act in constructing its road or buildings, or in running its trains, can be issued only when there is a specific legal duty on its part to do that act, and clear proof of a breach of that duty." And the charter direction, that the railroad should construct all necessary stations, was described as "but a general expression of what would be otherwise implied by law," and as not to "be construed as imposing any specific duty or as controlling the discretion in these respects of a corporation entrusted with such large discretionary powers upon the more important questions of the course and the termini of its road" (p. 500). Accordingly it was held that the determination of the directors with regard to the number, place and size of the station, having regard to the public convenience as well as the pecuniary interests of the corporation, could not be controlled by the courts by writ of mandamus. And see *People* v. *Railroad Co.*, 172 N. Y. 90.

The business conducted by the Transit Company is not purely private. It is of that class so affected by a public interest that it is subject, within constitutional limits, to the governmental power of regulation. This power of regulation

may be exercised to control, among other things, the time of the running of cars. It is a power legislative in its character and may be exercised directly by the legislature itself. But the legislature may delegate to an administrative body the execution in detail of the legislative power of regulation. *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362, 393, 394; *Interstate Commerce Commission* v. *Cincinnati, New Orleans & Texas Pacific Railway Company*, 167 U. S. 479, 494. We need not consider whether that legislative power may be conferred upon the courts of the Territory, as it may be upon the courts of a State, so far as the Federal Constitution is concerned. *Prentis* v. *Atlantic Coast Line Co.*, *ante*, p. 210. In this case the legislative power of regulation was not entrusted to the courts. On the contrary, it was clearly vested, by § 843, in the Governor and the Superintendent of Public Works. By that section the Transit Company was itself given authority, in the first instance, with the approval of the Governor, to make reasonable and just regulations regarding the maintenance and operation of the railway through the streets. The operation of a railway consists very largely in the running of cars, and the right of the Transit Company, to regulate, in the first instance, the operation of its railway clearly includes the power to decide upon time schedules. But the company cannot finally determine, as it chooses, the manner of operating its road in respect of the time, speed and frequency of its cars. Its primary duty is to operate a sufficient number of cars to meet the public convenience. This duty would rest upon the company, even if it were not expressed, as it is, in § 841. If the company itself complies with its duty by just and reasonable regulations of its own, it is enough. If the company fails in the performance of the duty, its performance is secured in the manner pointed out in the latter part of § 843. The Superintendent of Public Works may make, with the approval of the Governor, just and reasonable regulations, and they may be changed from time to time, as the public interests may demand, at the discretion of the Governor. Moreover, by an

amendment of the charter (Act 78, Session Laws 1905), the
Superintendent of Public Works may prescribe the speed of
cars. The precise function, therefore, which was exercised by
the courts below is by the statute, confided primarily to the
Transit Company, and ultimately to the discretion of the
Governor and Superintendent of Public Works. The courts
have no right to intrude upon this function, and subject the
company to a species of regulation which the statute does
not contemplate. If the courts were held to have the powers
which were assumed in this case it would lead to great em-
barrassment in the operation of the railway, and perhaps to
distressing conflict. Can it be that the courts can dictate the
frequency of the running of the cars, and the Superintendent
of Public Works their speed? If so, the lot of the company
is indeed a hard one. The two incidents of operation are not
only related, but inseparable. The authority which controls
the one must control the other, or operation becomes impossi-
ble. Suppose, again, that the courts, upon hearing evidence,
should be of opinion that one schedule is required for the
public convenience and the Governor and Superintendent of
Public Works should be of opinion that another schedule
would better subserve that convenience, which order must the
company obey? Must it choose between the liability to punish-
ment for contempt for disobeying the order of the court and
the liability to forfeiture of its franchise for failing to obey
the order of the Governor and Superintendent of Public
Works?[1] These and other like situations, which easily might

[1] SEC. 870.. "Whenever the said association or any corporation
which may have been duly organized under the laws of this Territory
for the purpose of constructing, operating, and maintaining the lines
of railway mentioned in this chapter, and as by this chapter provided,
refuses to do or fails to do or perform or carry out or comply with any
act, matter or thing requisite or required to be done under the provisions
of this chapter, and shall continue so to refuse or fail to do or perform
or carry out or comply therewith, after due notice by the Superintendent
of Public Works to comply therewith, the Superintendent of Public
Works shall with the consent of the Governor cause proceedings to be

be imagined, are signal illustrations of the importance of observing the boundaries between the judicial and legislative field, and of the confusion and injury which would follow from the failure to respect those boundaries. Nothing is decided as to the power of the courts to review the action of the Superintendent or Governor.

In our opinion, the injunction which was issued in this case, constituting in substance a regulation of the operation of the railway, was, in the first place, not within the limits of the judicial power, and, in the second place, totally inconsistent with the power of regulation vested unmistakably by the legislature in the executive authorities.

*Decree reversed.*

THE CHIEF JUSTICE dissents.

instituted before the proper tribunal to have the franchise granted by this chapter and all rights and privileges granted hereunder, forfeited and declared null and void."