CAMDEN *v.* ARKANSAS LIGHT & POWER COMPANY.

Opinion delivered September 27, 1920.

1. CORPORATION COMMISSION—RIGHT TO TEST VALIDITY OF ACT.—The remedy by proceeding under the Corporation Commission act for relief against unreasonable rates for public utilities by appeal to the courts from the action of the commission does not apply to an attack on the validity of the act itself, and a suit in equity may be maintained to restrain the enforcement of the act if it is unconstitutional.

2. CONSTITUTIONAL LAW — CHANGE OF FRANCHISE RATES — IMPAIRMENT OF OBLIGATION OF CONTRACT.—The power conferred by Acts 1919, No. 571, on the Corporation Commission to change the franchise rates for public utilities is an exercise of the State's police power, and does not impair the obligation of contracts.

Appeal from Ouachita Chancery Court; *James M. Barker,* Chancellor; affirmed.

*H. P. Smead,* for appellant.

Act 571, Acts 1919, is unconstitutional as impairing the obligation of a contract. 115 Ark. 437.

Contracts between a municipality and an individual are in the same category as those between individuals. *Lonoke* v. *Bransford,* 141 Ark. 18. See, also, 26 U. S. (Law. Ed.), p. 395; 54 *Id.* 144. Although a municipal corporation is a creature of the Legislature, and the Legislature may amend or repeal its charter at will, it can not interfere with a contract already entered into or impair its obligation. This is sustained by the decisions of our State and United States Supreme Courts, too numerous to cite.

*Hamilton Moses,* for appellee.

1. Municipalities in the granting of franchises are not specifically empowered with authority to make con-

tract rates in derogation of the rights of the State. Kirby's Digest, §§ 6468-9, 5445. A municipal corporation has no powers except those expressly conferred by the Legislature or those necessarily or fairly implied as incident or essential thereto. 133 Ark. 334; 121 *Id.* 606; 116 *Id.* 125. See, also, 248 Ill. 264; 93 N. E. 274; 211 U. S. 265; 219 *Id.* 467. A city has no power to regulate rates for utilities without special legislative authority. *Winchester* v. *Winchester Water Works Co.*, 251 U. S. 192; 88 S. W. 41; 49 So. Rep. 509; 34 N. E. 702; 127 Fed. 731; 86 N. Y. 657; 109 Atl. 210.

2. In granting franchises, municipalities act as agents of the State, and they may exercise only those powers specifically delegated to them by the State or those necessarily implied. 118 N. E. 529-533; 194 U. S. 517; 196 *Id.* 48; 95 *Id.* 644; 208 *Id.* 192.

3. The power to fix rates is inherent in the State, and in the exercise of its police power it may delegate this authority to a Corporation Commission. 199 U. S. 473; 232 *Id.* 548; 209 *Id.* 249; 170 *Id.* 571; 219 *Id.* 549; 173 Pac. 1178; 161 *Id.* 391; 214 S. W. 71; 117 Pac. 361; 173 *Id.* 799; 83 So. Rep. 295; 173 Pac. 556; 105 Atl. 210; 173 Pac. 973; 141 *Id.* 1083; 120 *Id.* 61. Public service commissions may be authorized to change franchise rates. 125 N. E. 374; 121 N. E. 777. See, also, 204 S. W. 467; 207 *Id.* 799; 163 S. W. 257; 129 N. W. 125; 105 Atl. 551; 170 U. S. 571; 219 *Id.* 549; 250 *Id.* 394; 248 *Id.* 296, 372.

Many cases sustain the right of the Legislature to confer upon the corporation the right to change franchise rates. 130 N. W. 530; 45 N. W. 145; 99 Atl. 395; 155 N. W. 948; 255 Fed. 295; 104 Atl. 839; 219 S. W. 380; 187 Pac. 1082; 177 N. W. 306.

HUMPHREYS, J. Appellant instituted suit in the Ouachita Chancery Court to enjoin appellee from putting into effect a schedule of rates for water, power and electricity established by the Arkansas Corporation Commis-

sion in excess of the maximum rates fixed for patrons for a period of twenty-five years in the franchises granted appellee by appellant on October 19, 1914. The bill in substance alleged that act 571 of the Acts of the General Assembly of Arkansas of 1919, under which said rates were raised, is void, as impairing the obligation of contracts, in violation of section 17, article 2, of the Constitution of Arkansas, and section 10, article 1, of the Constitution of the United States.

Appellee filed a demurrer to the bill on the grounds, first, that the act in question provided a complete remedy by contest of rates before, and an appeal from, the commission to the courts, which remedy was adopted and being prosecuted by appellant; second, that the facts set out in the bill were insufficient to constitute a cause of action.

The court sustained the demurrer on the latter ground, and, upon appellant's refusal to plead further, dismissed the bill, from which an appeal has been duly prosecuted to this court.

It is suggested by appellee that appellant has a complete remedy under the act to prevent the imposition of an unreasonable schedule of rates, which is true if the act is valid, but no provision is made in the act for attacking its validity. This proceeding is an attack upon the constitutionality of the act, in so far as it empowers the Arkansas Corporation Commission to modify contract rates existing between municipalities and public utilities, and was instituted in the proper court.

The correctness of the decree is challenged by appellant on the ground that act 571 of the General Assembly of 1919, conferring power on the Arkansas Corporation Commission to change the franchise rates for water, power and electricity existing between municipalities and public utilities, is repugnant to the provisions of the State and Federal Constitutions, prohibiting the passage of any law impairing the obligation of contracts. The power to change existing franchise rates between municipal corporations and public utilities is found in sec-

tion 8 of said act, and reads as follows: "Commission Authorized to Establish Rates. The commission shall have the power, after reasonable notice and after full and complete hearing, to enforce, originate and establish, modify, change, adjust and promulgate tariffs, rates, joint rates, tolls and schedules for all public service corporations; and whenever the commission shall, after notice and hearing, find any existing rates, tolls, tariffs, joint rates or schedules unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any of the provisions of the law, the commission shall, by an order, fix reasonable rates, joint rates, tariffs, tolls, charges or schedules to be followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory, inadequate or otherwise in violation of any of the provisions of this law."

The policy of the act was to create one regulatory agency to establish just and reasonable rates that public service utilities might charge the public for such service and to change unjust and unreasonable franchise rates existing between individuals or municipalities and such utilities. The questions are, Can the State withdraw this power from the municipalities of the State and transfer it to another agency; and, can it empower the new agency to change the franchise rates theretofore agreed upon between the municipalities and public utilities? These questions are answered in the affirmative by the decided weight of authority. The judicial opinions bearing upon the questions by the highest State and National tribunals are based upon the reserved or sovereign police power of the States. It was said by the Supreme Court of the United States in *Atlantic Coast Line Railroad Co.* v. *Goldsboro,* 232 U. S. 548, that, "It is settled that neither the 'contract' clause nor the 'due process' clause has the effect of overriding the power of the State to establish all regulations that are reasonably necessary to secure the health, safety, good order, comfort or general welfare of the community; that this power can neither be abdicated nor bargained away, and is inalienable even

by express grant; and that all contract and property rights are held subject to its fair exercise." The same doctrine was enunciated in *Manigault* v. *Springs,* 199 U. S. 473; *Hudson County Water Co.* v. *McCarter,* 209 U. S. 349; *Chicago, B. & Q. Ry. Co.* v. *Nebraska,* 170 U. S. 57; *Chicago, B. & Q. Ry. Co.* v. *McGuire,* 219 U. S. 549; *Pawhuska* v. *Pawhuska Oil & Gas Co.,* 250 U. S. 394; *Englewood* v. *Denver,* 248 U. S. 296; *Union Dry Goods Co.* v. *Public Service Commission,* 248 U. S. 372.

In support of the same doctrine a few excerpts from State courts are incorporated herein. It was said by the Supreme Court of Oregon in *City of Portland* v. *Public Service Commission of Oregon,* 173 Pac. 1178, that: "All authority whatever possessed by cities and towns emanated from the State. * * * The State, operating through its legislative assembly, or directly by its people, exercising the initiative, is still paramount in the matter of making laws. It can delegate authority to its subordinate governmental agencies, and it can revoke it. Moreover, all that is done under the appointment is subject to the ever-present and all-pervading principle that for the public good a State may control all stipulations for public service. Substantially this is a condition of every such agreement." And again, the same court, in *Woodburn* v. *Public Service Commission,* 161 Pac. 391, said: "If the franchise is deemed to be a contract between the city and telephone company, then the mere fact that it was made prior to the enactment of the public utility statute and before the State attempted to regulate the rates, does not debar the State from increasing the rates fixed in the contract between the parties, for the reason that the law wrote into it a stipulation by the city that the State could, at any time, exercise its police power and change the rates; and therefore, when the State does exercise its police power, it does not work an impairment of any obligation of the contract. The immediate parties to the franchise must contract with reference to the right of the government to exercise its inherent authority."

In the recent case of *City of Memphis* v. *Enloe,* 214 S. W. 71, the Supreme Court of Tennessee said (quoting syllabus): "Acts 1919, chapter 49, extending the powers of the Railroad Commission to public utilities and allowing the commission to investigate and fix rates, is not invalid as impairing the obligation of contract in violation of the Constitution of the United States and the Constitution of the State of Tennessee, article 1, section 20, as to the city of Memphis, which had previously by ordinance fixed the rate which a street railroad company doing business therein might charge."

In the case of *Durant* v. *Consumers Light Company,* 177 Pac. 361, the Supreme Court of Oklahoma announced the same doctrine (syllabus 3): "Where a city enters into a contract with a light and power company by the terms of which the city sells its municipal light plant to the company, and as a part of the consideration the company agrees to furnish electric current to the inhabitants of the city at rates mentioned in the contract for a fixed period, under chapter 93, S. L. 1913, the Corporation Commission has jurisdiction to make an order authorizing a change in the schedule of rates."

And in the case of *Benwood* v. *Public Service Commission,* 83 S. E. 295, the Supreme Court of West Virginia subscribed to the same doctrine (syllabus 5):

"Impliedly from general powers, a municipal corporation may have the power to contract in the matter of public service rates, as long as the Legislature does not exercise its reserved power in that particular, but any contract so made is only permissive and is subject to future legislative action."

There are many other authorities confirming the doctrine that to regulate or alter rates charged, or to be charged, by public utilities, is an inherent attribute of police power or sovereignty existing in the State, which may be exercised at any time through any State agency for the purpose of establishing just, equitable and reasonable rates under such circumstances as may exist at the time. It is seemingly an attribute of sovereignty

which can not be contracted away, and in contemplation of which all contracts or agreements must be made. *City of Billings* v. *Billings Gas Co.* (Mont.), 173 Pac. 799; *Salt Lake City* v. *Light & Traction Co.* (Utah), 173 Pac. 556; *Collingswood* v. *Collingswood* (N. J.), 105 Atl. 210; *Sand Point Water Co.* v. *Sand Point* (Idaho), 173 Pac. 972; *Idaho Power Company* v. *Blomquist* (Idaho), 141 Pac. 1083; *State ex rel.* v. *Superior Court* (Wash.), 120 Pac. 61; *Utilities Commission* v. *City of Quincy* (Ill.), 125 N. E. 374; *South Glen Falls* v. *Public Service Commission*, 121 N. E. 777; *State ex rel.* v. *Public Service Commission* (Mo.), 204 S. W. 467; *St. Louis* v. *Public Service Commission* (Mo.), 207 S. W. 799; *State* v. *Kansas City Gas Co.* (Mo.), 163 S. W. 854.

We find nothing in the case of *Lonoke* v. *Bransford,* 141 Ark. 18, decided by this court on November 24, 1919, cited by appellant as ruling this case, in conflict with the doctrine announced in the instant case. It was held in that case that the contract was binding between the municipality and the public utility unless modified by mutual agreement or consent of the parties, or changed on application to the proper authority.

Neither do we find any conflict between the doctrine announced in the instant case and that announced in the case of *Morgan Engineering Co.* v. *Cache River Drainage Dist.,* 115 Ark. 437, cited by appellant in support of its contention that the act in question is unconstitutional. The contract in that case was not within the reserved police power of the State and controlled by such sovereign power.

No error appearing, the decree is affirmed.