CITY OF FORT SMITH *v.* DEPARTMENT OF PUBLIC UTILITIES.

4-4915

Opinion delivered January 31, 1938.

*Fadjo Cravens,* for appellant.

*J. T. Hornor, Jr., Thomas Fitzhugh, Blake Downie, Edw. B. Downie* and *John Mohler,* for appellees.

McHANEY, J. On June 23, 1936, appellant adopted ordinance No. 1711, entitled: "An ordinance determining and regulating the character of service to be furnished by telephone companies to the users of telephone service in the city of Fort Smith, Arkansas; providing penalties; declaring an emergency and for other related purposes." Section 1 thereof made it unlawful for appellee telephone company to require the users of its service to install or permit the installation of pay telephones or coin box telephones wherein a coin must be deposited to make a telephone call therefrom, or to fail or refuse to install and maintain telephone service upon the payment of flat rates applicable to the type of service demanded, or to refuse to install and maintain such telephone service at such place on the subscriber's premises as he may determine. Section 2 requires the furnishing of such service to applicants therefor as soon as reasonably possible after demand, and not later than 10 days thereafter. Section 3 fixes the punishment for a violation of the ordinance and § 4 declares an emergency, making it immediately effective.

Thereafter, appellee telephone company, hereinafter called the company, filed with appellee, Department of

Public Utilities of the State of Arkansas, hereinafter called the department, what was designated as an appeal from said ordinance and complaint against appellant. It alleged its capacity as a foreign corporation; that it was engaged in the telephone business in the city of Fort Smith and in many other cities in this state; and that it has now, and for many years has had, in force certain rules, regulations and practices defining its service which are filed with the department and which are a part of every contract between it and its customers in this state, one of which rules is § C of art. V, as follows: *"Use of Customer Service.* Customer telephone service, as distinguished from public and semi-public telephone service, is furnished only for use by the customer, his family, employees or business associates, or persons residing in the customer's household . . . The telephone company has the right to refuse to install customer service or to permit such service to remain on premises of a public or semi-public character when the instrument is so located that the public in general or patrons of the customer may make use of the service. At such locations, however, customer service may be installed, provided the instrument is so located that it is not accessible for public use." It further set out the passage of said ordinance by appellant and challenged its validity on four grounds: (a) that it was passed without notice to it; (b) that the department had theretofore assumed jurisdiction of the subject-matter of said ordinance in another case pending before it, which deprived appellant of jurisdiction under the provisions of § 15 (e) of act 324 of 1935, and which cause is still pending; (c) that the enactment of said ordinance is an unlawful and arbitrary act of appellant, designed to compel it to furnish free telephone service to non-subscribers in that it would permit subscribers to allow the indiscriminate use by others of the subscriber's telephone, contrary to the tariffs on file with the department and contrary to the contracts between it and its various subscribers, in which telephone service is restricted; and (d) that its failure to observe said ordinance will subject it to the heavy penalties thereby imposed. It prayed "that the department issue an order suspending the op-

·eration, effect and enforcement of said ordinance, pending a hearing upon the validity thereof; and, if, after investigation and hearing, the department is of the opinion that there is a sufficient public demand for a flat rate semi-public service to justify its inauguration, a rate be prescribed therefor." It also prayed that this case be consolidated with the case then pending and for all other relief.

Appellant appeared specially before the department and moved to dismiss for the reason that it was given express authority to pass said ordinance by § 15 of said act 324 of 1935, and that the purpose of the appeal was to have the department determine the validity or invalidity of such ordinance, which is a judicial function, requiring the exercise of judicial power, and which, under the Constitution, was vested solely in the courts named in Art. 7, § 1, thereof, and that the department was not so named, and did not have the power to determine the validity of said ordinance. The department entered an order overruling the motion to dismiss and suspended the ordinance pending an investigation of the reasonableness of the rule put into effect by it and until its final order, such suspension to take effect upon the filing of a bond by the company conditioned to pay any damages or refunds occasioned by such suspension order. Said order announced a determination by the department to investigate, on its own motion, the reasonableness of said rule V-c and the enforcement thereof throughout the state. It thereafter entered upon such investigation and on September 29, 1936, rendered an elaborate opinion, and findings of fact, among others, that: "The department finds that the so-called city rule promulgated and put into effect by the city of Fort Smith through the passage of ordinance No. 1711, approved June 23, 1936, is unjust, unfair and inequitable to the telephone subscriber in that city and is, therefore, unreasonable.

"The department further finds that it should cancel, set aside and hold for naught said city rule and order and direct the company to restore said rule C to its tariffs applicable to telephone service in Fort Smith." An appropriate order was made in accord with its findings.

Thereafter, appellant sued out certiorari in the Pulaski circuit court to quash the order of the department, on the same ground asserted on its motion to dismiss. The writ was granted directing the department to send up the record of proceedings before it, which was done.. On response of the department, and by leave of court,..the company intervened. On a trial in the circuit court, appellant's petition to quash was denied, and the case is here on appeal.

The only question presented by this appeal is whether the department attempted to exercise judicial power in the action taken by it in the premises. All parties concede that the department is not a court and that it cannot exercise judicial powers. The department is an administrative body, created by the legislature, and, as such, it may perform only such duties and exercise such jurisdiction delegated to it by the legislature as the law-making body itself could constitutionally exercise. The dispute arises over the question as to whether the department's order in this case was legislative, and therefore valid, or judicial and, therefore, void.

Before determining this question, it may be helpful to consider the applicable provisions of the statute under which the parties have proceeded. Act 324 of the Acts of 1935, p. 895, is entitled "An act providing for the better regulation of certain public utilities in the state of Arkansas, and for other purposes." Section 15 (a) and (d) are as follows: "Every city and town shall have jurisdiction, acting by ordinance or resolution of its council or commission, (a) to determine the quality and character of, and the rates for, each kind of product or service to be furnished or rendered by any public utility within said city or. town, and all other terms and conditions upon which such public utility may be permitted to occupy the streets, highways or other public places within the municipality, and such ordinance or resolution shall be deemed *prima facie* reasonable.

"(d) Any public utility affected by any such ordinance or resolution, or any other party authorized to complain to the department under § 17 hereof, may appeal from the action of said council or commission by fil-

ing, within twenty (20) days of such final action, a written complaint with the department setting out wherein the ordinance or resolution is unjust, unreasonable, or unlawful, whereupon the department shall proceed with an investigation, hearing, or determination of the matters complained of with the same procedure that it would dispose of any other complaint made to it with like effect. Provided, that such appeal shall not suspend the enforcement of any provisions of said ordinance or resolution, unless the department shall, after a hearing, upon notice and for good cause shown, order the suspension conditioned upon the filing of a bond with the department as provided for the bond in paragraph (b) of § 18 of this act; and provided further, that nothing in this section shall be construed to in any wise limit or restrict the jurisdiction or the powers of the department as in other sections granted; provided that on appeal by any public utility from an ordinance or resolution of any council or commission lowering rates where the department has refused to suspend the ordinance appealed from as provided herein, the utility may apply to the department for an order suspending said ordinance or resolution and impounding the difference in the old and new rates pending the final determination of the cause, and the department shall make its order suspending the ordinance or resolution and impounding the funds subject to final action on the appeal.''

Appellant acted under § 15 (a) in passing the ordinance, and the company proceeded under 15 (d). But appellant says, although 15 (d) authorizes the procedure taken by the company and attempts to confer the jurisdiction on the department which it assumed and exercised herein, that said provision is unconstitutional and void because it attempts to confer judicial power on the department, which brings us back to the whole question in the case. We cannot agree with appellant in this contention. The effect of the order of the department was to reinstate rule V-c, above quoted, which was on file with the department, and which had been abrogated by the ordinance in so far as the city of Fort Smith was concerned. The department's order did not repeal the ordi-

nance or hold it invalid, but only that the rule established by it, referred to in the order as "the City Rule" is unreasonable, because unjust, unfair and inequitable to subscribers in that city. Certainly the legislature itself could have enacted a law putting rule V-c into effect and prohibiting its violation, and, if so, it certainly could delegate such authority to the department to determine the facts and establish the rule. We are not now concerned with the reasonableness of said rule and do not so decide. We are only concerned with the question presented, that is, whether the action of the department was legislative or judicial. The rule involved has a direct bearing on rates and character of service to be rendered in the future. In this connection, §'8 (e) of said act 324 is instructive. It provides: "The department is hereby empowered, after hearing and upon notice, to make and from time to time, in like manner, alter or amend such reasonable rules pertaining to the operation, accounting, service and rates of public utilities, and of the practice and procedure governing all investigations by, and hearings and proceedings before the department, as it may deem proper and not inconsistent with this act."

In *Camden* v. *Arkansas Light & Power Co.,* 145 Ark. 205, 224 S. W. 444, it was said: "There are many other authorities confirming the doctrine that to regulate or alter rates charged, or to be charged, by public utilities, is an inherent attribute of police power or sovereignty existing in the state, which may be exercised at any time through any state agency for the purpose of establishing just, equitable and reasonable rates under such circumstances as may exist at the time. It is seemingly an attribute of sovereignty which cannot be contracted away, and in contemplation of which all contracts or agreements must be made." Citing cases.

In *Southern Cities Distributing Co.* v. *Carter,* 184 Ark. 4, 41 S. W. 2d 1085, we used this language: "The making or fixing of rates is an act legislative and not judicial in kind within the meaning of this constitutional amendment." Citing cases. So, also, is the making of reasonable rules and regulations, governing the operation of utilities, a legislative act and not judicial. One of the

leading cases pointing out the distinction between such acts cited by all parties is *Prentis* v. *Atlantic Coast Line Co.*, 211 U. S. 210, 29 S. Ct. 67, 53 L. ed. 150, where the late Mr. Justice HOLMES, speaking for the U. S. Supreme Court, said:

"A judicial inquiry investigates, declares, and enforces liabilities as they stand on present or past facts and under laws supposed already to exist. That is its purpose and end. Legislation, on the other hand, looks to the future and changes existing conditions by making a new rule, to be applied thereafter to all or some part of those subject to its power. The establishment of a rate is a making of a rule for the future, and therefore is an act legislative, not judicial, in kind, as seems to be fully recognized by the Supreme Court of Appeals (*Com.* v. *Atlantic Coast Line R. Co.*, 106 Va. 61, 7 L. R. A. (N. S.) 1086, 117 Am. St. Rep. 983, 55 S. E. 572), (9 Ann. Cas. 1124) and especially by its learned president in his pointed remarks in *Winchester & S. R. Co.* v. *Com.*, 106 Va. 264, 55 S. E. 692. See further *Interstate Commerce Commission* v. *Cincinnati, N. O. & T. P. R. Co.*, 167 U. S. 479, 42 L. ed. 243, 17 Sup. Ct. Rep. 896; *San Diego Land & Town Co.* v. *Jasper*, 189 U. S. 439, 47 L. ed. 892, 23 S. Ct. 571.

"Proceedings legislative in nature are not proceedings in a court, . . . no matter what may be the general or dominant character of the body in which they may take place. . . . That question depends not upon the character of the body but upon the character of the proceedings. . . . And it does not matter what inquiries may have been made as a preliminary to the legislative act. Most legislation is preceded by hearings and investigations. But the effect of the inquiry, and of the decision upon it, is determined by the nature of the act to which the inquiry and decision lead up. . . . So, when the final act is legislative, the decision which induces it cannot be judicial in the practical sense, although the questions considered might be the same that would arise in the trial of a case."

Another case is *Honolulu Rapid Transit & Land Co.* v. *Hawaii*, 211 U. S. 282, 29 S. Ct. 55, 53 L. ed. 186, where

it is said: "The business conducted by the transit company is not purely private. It is of that class so affected by a public interest that it is subject, within constitutional limits, to the governmental power of regulation. This power of regulation may be exercised to control, among other things, the time of the running of cars. It is a power legislative in its character, and may be exercised directly by the legislature itself. But the legislature may delegate to an administrative body the execution in detail of the legislative power of regulation."

And in *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 53 L. Ed. 371, 29 S. Ct. 148, the following: "Nevertheless, the function of rate-making is purely legislative in its character, and this is true, whether it is exercised directly by the legislature itself or by some subordinate or administrative body, to whom the power of fixing rates in detail has been delegated. The completed act derives its authority from the legislature and must be regarded as an exercise of the legislative power."

We, therefore, conclude that the order of the department was not judicial, but legislative, and that it had the power to make it. The judgment of the circuit court refusing to quash the order of the department is affirmed.

MEHAFFY, J., dissents.