Southwestern Bell Telephone Company *v.* Hutton.

4-6636                                                      160 S. W. 2d 201

Opinion delivered March 9, 1942.

*Bernal Seamster* and *Downie & Downie,* for appellant.

*Rex W. Perkins* and *Robert A. Leflar,* for appellee.

Smith, J.   Appellee sued to recover the statutory penalty provided for in § 14261, Pope's Digest, alleging discrimination against him by the appellant telephone company, hereinafter referred to as the company.   He recovered a judgment, from which is this appeal.

Appellee operates a cafe in the city of Fayetteville called Red Bird Dinette.   On and prior to May 26, 1939, appellee had in his place of business a coin box telephone,

the use of which could be availed of only by depositing five cents, and anyone making that deposit could use the telephone, and such use by the public was invited. On May 26, appellee advised appellant's local manager that he wanted a regular business telephone, and not a coin box telephone. At that time, the telephone company had a flat rate of $10.50 per month for business telephones, which, after June 1, 1939, was reduced to $7 per month. There were no restrictions upon the use of this service, and the telephone for this character of service would be placed wherever the subscriber wished. This service was known as a public usage telephone in a business establishment. The company had another rate for telephones in business establishments, which contemplated a restricted service limited to the personal use of the subscriber and his employees. The rate for this service was $3.50 per month. Both tariff rates had been filed with the State Department of Public Utilities. *City of Fort Smith* v. *Department of Public Utilities,* 195 Ark. 513, 113 S. W. 2d 100.

This cheaper service was controlled and provided for by Rule V-C, which was part of the tariff, and which reads as follows: "Use of customer service—Customer telephone service, as distinguished from public and semi-public telephone service, is furnished only for use by the customer, his family, employees or business associates, or persons residing in the customer's household, except as the use of the service may be extended to joint users. The telephone company has the right to refuse to install customer service or to permit such service to remain on premises of a public or semi-public character when the instrument is so located that the public in general or patrons of the customer may make use of the service. At such locations, however, customer service may be installed provided the instrument is so located that it is not accessible for public use."

The validity of Rule V-C is conceded provided it is given a reasonable interpretation; and we think a reasonable interpretation of the rule is that it did not require the subscriber or customer to forbid the use of the telephone to anyone asking its use, but did contemplate that

the telephone furnished under this rule should not be so placed as to be readily and conveniently accessible to the public.

It is entirely certain, indeed, appellee freely admits, that he wanted the unrestricted service, for which a charge of $10.50 per month was made, at the restricted service rate of $3.50 per month. He testified that he told the company's manager that he wanted his telephone placed on his counter. This would, of course, have made it easily accessible to the public or to anyone entering appellee's cafe. There appears to be no question but that appellee understood the difference between the two classes of service, and the difference in the prices charged therefor, but he insists that it was agreed that his telephone should be placed "on top of the counter, up where the people sat and eat—up front," and that he should have this service at the rate of $3.50 per month. Such an agreement, if made, would have constituted a discrimination in appellee's favor as against other subscribers for the $3.50 rate, and would have been in violation of § 2075, Pope's Digest, and would have subjected the company to the penalties prescribed for such discrimination.

However, this is the service which appellee testified that he demanded and the company agreed to furnish, although he testified that he agreed to accept a telephone placed under or behind his counter or under a stairway, provided it was "in front" part of his cafe.

Upon the installation of a telephone the subscriber is required to sign a contract and to make a deposit, which in the case of the restricted or $3.50 per month service was $10. Appellee signed such a contract dated May 26, 1939. The contract which appellee signed contained this recital: "Application for service at Fayetteville, Ark. Exchange. The undersigned makes application for the service and equipment shown on the reverse, and for such additional service or equipment as may be ordered later, and agrees to pay established rates for all such service and equipment. In making this application the undersigned agrees to the rules and regulations of the telephone company as set forth in the exchange tariff, and to any general change or

changes in the rules, regulations, tariffs or rates for the service furnished under this application. This application becomes a contract when signed by the manager or higher official, or upon the establishment of service. Full name: Red Bird Dinette, By (Sgd.) Paul Hutton. Taken by ACJ. Date 5-26, 1939.''

Written on the face of the contract was the recital: ''Customer agrees Tel. is not to be available for general public use. Tel. to be located in kitchen.'' The testimony is sharply conflicting as to whether this notation had been written on the face of the contract before appellee signed it. He testified that there was no such agreement; that he did not know it had been incorporated in the contract; and that he did not believe it had been, but that it had been written into the contract after he signed it. In view of the jury's verdict we assume appellee's testimony was accepted as true.

Appellee testified that after signing the contract he was absent from his place of business for a few hours, and that during his absence the telephone was installed in his kitchen, and that he immediately and has since continuously protested that action, for the reason that a telephone in the kitchen is of but little value to him, as he was frequently alone in his cafe and was required to remain in his front room. The telephone remained in use and was not removed from the kitchen until December 27, 1939.

Many questions are discussed; but we find one of them decisive of this case, and do not consider any other; and that is, that appellee failed to make the written demand which the statute requires for service.

An attempt was made to prove a demand by testimony to the effect that appellee had written a letter to the company (which it denied receiving), but appellee receded from this position when it was shown that the carbon copy of the letter was dated June 8, 1940, which was apparently a year after appellee's alleged demand for service; but this letter passed out of the case when appellee's counsel announced that it was not relied upon as constituting the written demand for service, so that

the only writing constituting a demand for service is the written contract hereinbefore referred to executed before the installation of the telephone in the kitchen.

The clear and only purpose of the requirement of the statute under which this suit was brought, that a written demand for service be made, is to put the telephone company on notice that the applicant is applying for service, and that if the same is not furnished the applicant will hold the company liable for the statutory penalty. In our opinion, the written contract above referred to is not such a notice of demand for service as the statute contemplates. If it could be called a demand for service, it may be answered that the service was furnished for which the contract called, and was continuously furnished from its date until December 27, 1939. If the service furnished under the contract was not that desired, appellee should have given the written notice required by the statute demanding the desired service. If this is not the law, then the door has been opened wide for the commission of fraud. An applicant might, as does appellee here, demand and receive service, then wait an indefinite time, while penalties are accumulating, and then bring suit for the penalties upon the allegation that he had not been furnished the service desired. If the contract was a demand for service, the demand recited that it was made for service in accordance with the rules and regulations of the company, one of which was Rule V-C, copied above.

Now, appellee testified that when he found the telephone had been placed in the kitchen he made protest and frequent demand that it be moved "up front" out of the kitchen. Even so, these were oral demands, while the statute requires a written demand.

There is no direct connection between this case and that of the plaintiffs in the case of *Southwestern Bell Telephone Co.* v. *Lee and Hanna,* 200 Ark. 318, 140 S. W. 2d 132, in which case the opinion was delivered April 8, 1940; but the cases are related. The plaintiffs there are witnesses for appellee here. In that case, judgments for the penalties for discrimination prescribed by § 14261, Pope's Digest, were affirmed. After the affirmance of

this judgment in her favor, Mrs. Lee brought another suit for penalties alleged to have accrued since the filing of the first suit. She alleged in this second suit the demand on which the first suit was predicated; but she had made no other demand. The second suit was predicated upon the theory that the company knew what she wanted, as she had just successfully prosecuted suit for the failure to give her the service demanded.

A demurrer to the second complaint was sustained and the case dismissed for failure to make further demand, and that judgment was affirmed on appeal to this court. *Lee* v. *Southwestern Bell Telephone Co., ante,* p. 859, 158 S. W. 2d 933.

In affirming this judgment of the trial court we said that the statute was highly penal, and should be strictly construed, and that the notice upon which the first suit was brought did not suffice to maintain the second one.

So, here, if the contract for service could be called a demand for service, and the service supplied was not that demanded, then a written demand for the service required should have been made, and as this demand was not made the judgment must be reversed, and the cause will be dismissed.

HUMPHREYS, J. (dissenting). The majority opinion in this case has ignored the issue of discrimination pleaded and proved to the satisfaction of the jury by the appellee and has bottomed its opinion on the sole issue as to whether or not written notice was given to appellant by appellee of the character and kind of telephone he desired. The application signed by him and accepted by the company designated the kind and character of telephone that he wanted and constituted within itself a written demand for service provided for in § 14261 of Pope's Digest. Had a separate written demand been made it could not have informed appellant more accurately and definitely of the kind and character of the telephone wanted than did the written application made and accepted by appellant. It is true that the statute is highly penal and must be strictly construed, but I think

the application which was signed by appellee and accepted by appellant was in strict compliance with the statute requiring that a written demand be made for service. The issue of whether or not the application signed by appellee and accepted by appellant was a sufficient written demand for the service wanted was submitted to the jury under correct instructions and it found that it was in compliance with the statute. I do not think that it can be said as a matter of law that the application was an insufficient demand for the service wanted. This being so the issue was properly submitted to the jury and determined by it adversely to appellant, and appellant is bound by the verdict. I think the majority of the court have clearly invaded the exclusive province of the jury in determining the question of fact as to whether the written application was an insufficient compliance with the statute. The case of *Lee* v. *Southwestern Bell Tele. Co., ante,* p. 859, 158 S. W. 2d 933, is not a parallel case. In that case no notice or demand whatever was given by Mrs. Lee to the Southwestern Bell Telephone Company either in the form of a written notice or in the form of an application signed by her and accepted by the appellant. In the instant case there was a written application for the service desired which was accepted by the appellant. In the instant case appellant not only accepted a written application for the service desired, but demanded and received a $10 deposit which it has never returned.

I am not discussing the evidence in the record touching the issue of discrimination because the majority opinion does not discuss that issue.

In passing I might say that the great weight of the evidence in the instant case, in my opinion, discloses the grossest kind of discrimination between appellee and other users of the telephone in Fayetteville. As I understand from this record appellee is the only party in all the city of Fayetteville where appellant has attempted to require a telephone user to accept the placement of the telephone in a kitchen in the back end of his business building. This, too, in the face of the fact that appellee was willing for it to place the telephone in the front part or business part, under the counter or back of the

counter so the public generally could not use it. As the majority have not discussed this question I will not further express myself on the great injustice which, in my opinion, appellant is attempting to impose upon appellee in the placement of the telephone.

I, therefore, for the reasons expressed, respectfully dissent from the majority opinion.

Mr. Justice MEHAFFY joins me in this dissent.