The Honorable Mike Kinard State Senator P. O. Box 727 Magnolia, AR 71753
Dear Senator Kinard:
This is written in response to your request for an official opinion regarding the following questions:
 1. Did Amendment 55 to the Arkansas Constitution eliminate or otherwise restrict or reduce the judicial duties of the Justice of the Peace Courts?
Amendment 55 to the Arkansas Constitution revised county government in Arkansas providing, inter alia, that counties exercise local legislative authority not denied by the Constitution or laws through their respective quorum courts, consisting of nine (9) to fifteen (15) justices of the peace.
Article 7, 40 of the Constitution established justice of the peace courts (hereinafter "JP courts") and granted them original jurisdiction in matters in four specific areas. Municipal courts are vested with jurisdiction concurrent with justice of the peace courts, except that the amount in controversy which municipal courts can now hear has been raised to three thousand dollars ($3,000). See Art. 7, 43 and Amendment 64, 1 to the Arkansas Constitution.
The Arkansas Supreme Court in Peel v. Kelly, 268 Ark. 90, 91,594 S.W.2d 11 (1983) held that the statutory jurisdiction of municipal courts need not be exactly coextensive with the statutory jurisdiction of justices of the peace; however, it may be so coextensive [citing State ex rel. Moose v. Woodruff, 120 Ark. 406,179 S.W. 813 (1915).]
Amendment 55 did not address the areas in which JP courts have jurisdiction, and thus did not eliminate, reduce or restrict their authority. The author of a law review comment speculated that Section 8 of Amendment 55, a standard repealer clause, "makes it questionable" that the amendment intended to abolish the judicial authority of the JP courts; however, no subsequent statutory or case law has so held. See Davis, 28 Ark. L. Rev. 226, 239 (1974-1975). The writer concludes at page 243 that it "does not appear" that judicial authority was so abolished.
 2. Have acts been passed by the Legislature subsequent to the passage of Amendment 55 which would restrict, reduce or expand the duties of the Justice of Peace courts?
Amendment 55, 1 and 4, became effective January 1, 1977. The rest of its provisions took effect upon enactment — November 5, 1974. Since that time, Act 431 of 1987 has been enacted to help implement Amendment 64. See, Act 431, 10. Section 4 of that Act, codified at A.C.A. 16-17-704 (Supp. 1987), provides that a municipal court shall, have original jurisdiction, coextensive with the county wherein it is situated, "over the following matter":
 Exclusive of justices of the peace . . . over violations of all ordinances passed by the city council of the city or quorum court of the county wherein such municipal court is situated;
Exclusive of justices of the peace in townships subject to this Act and concurrent with the circuit court, over misdemeanors committed within the county and the issuance of search warrants within the county;
 Concurrent with justices of the peace, and exclusive of the circuit court, in all matters of contract where the amount in controversy does not exceed the sum of one hundred dollars ($100.00) excluding interest . . . (Emphasis added)
Additionally, it is re-established by Act 431 of 1987 that municipal courts have jurisdiction coextensive with the county except where two judicial districts lie within one county; then, it extends to the district boundary. See A.C.A. 16-17-206(b) (Supp. 1987).
In counties where a municipal court exists, venue of JP courts may be changed to municipal court upon motion. A.C.A. 16-17-218.
Generally, a justice of the peace retains all previously granted jurisdiction concurrent with municipal courts except for those matters over which municipal court have been given exclusive jurisdiction. A.C.A. 16-17-704 (Supp. 1987); Const. Ark., Amendment 64. See also A.C.A. 16-17-206(a) to which precludes both municipal and JP courts from exercising jurisdiction in civil cases where a lien on land or title or possession thereof is involved.
Act 431, 4 clearly provides that JP courts would not in the future have jurisdiction over claims involving (1) violations of city ordinances; (2) violations of county ordinances; (3) the issuance of search warrants within the county, nor (4) over misdemeanors committed within the county.
JP courts retain, in Act 431, jurisdiction over contract matters where the amount in controversy does not exceed $100.00.
Two additional points are worth noting. Act 431, 4, states that it applies to JP's in townships "subject to this Act." Since Act 431 does not specify any townships to which it does not apply, presumably it applies to all in Arkansas. Also, by completely reiterating the language of Art. 7, 40 as applied to municipal courts versus JP courts,(1) it can be presumed that the General Assembly intended for municipal courts and JP courts to exercise concurrent jurisdiction in this area as the General Assembly could not, by legislative act, strip the JP courts of constitutionally granted jurisdiction. The answer to your question is thus, yes. Act 431 limits and restricts JP court jurisdiction. This discussion leads to your third question.
3. What is the present jurisdiction of JP courts?
The current jurisdictional parameters of JP courts is found in Art. 7, 40, A.C.A. 16-19-101 — 104, which may have been partially superceded by the Arkansas Rules for Inferior Courts, 16-17-704
and 16-19-401, 16-96-201 through 16-96-510 and 16-108-106,5-66-110, 5-72-110, 14-14-1301 and 14-45-106.
Your fourth question is:
 4. If an individual justice of the peace does not choose to preside over a JP court, can that JP still sign arrest warrants when requested by a prosecutor or city attorney?
Section 4 of Act 431 of 1987 states that henceforth municipal courts shall have exclusive jurisdiction over misdemeanors [misdemeanors] committed within the county and the issuance of search warrants within the county. The General Assembly has the authority to make such change as Art. 7, 40 states JP courts will have such jurisdiction over misdemeanors "as is now, or may be, prescribed by law."
 (1) Municipal courts shall have jurisdiction to sit as examining courts and commit, discharge, or recognize offenders to the court having jurisdiction of the trial and to bind persons to keep the place or behavior. This language is virtually identical to Art. 7, 40.
Since justices of the peace no longer have jurisdiction over misdemeanors nor the power to issue search warrants, it would be legally inappropriate for them to sign arrest warrants. The United States Supreme Court has held that no distinction exists between authority to seize property and seizure of a person. U.S. v. Watson, 423 U.S. 411, 428, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976) and that, correspondingly, the seizure of a person is subject to the same constitutional restrictions as seizure of property. Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371,63 L.Ed.2d 639 (1979).
It is apparently not relevant to your inquiry as to whether a justice of the peace has elected to actively preside over a JP court.
 5. Can the same JP mentioned in the question just preceding issue search warrants if requested by the Prosecutor or City Attorney?
No, because of Section 4 of Act 431 of 1987.
 6. Does Amendment 55 or any other Amendment of the Arkansas Constitution have language that prevents a violation of the separation of powers doctrine when a justice of the peace functions as a judicial officer and also as a legislative office holder on the quorum court?
Article 4, 2 of Arkansas' Constitution prohibits a person in one department of government from exercising power belonging to another department "except in the instances hereinafter expressly [expressly] directed or permitted."
Also, Article 19, 6 provides that no person shall hold or perform the duties of more than one office in the same department of government at the same time. However, this prohibition only applies to state officials and thus, is not applicable to your request. See, Peterson v. Culpepper, 72 Ark. 230, 79 S.W. 783
(1906).
Certainly, at first blush, the grant of judicial authority to an executive could violate Art. 4, 2. However, this office has previously opined that a county judge in Arkansas still has authority to hear bastardy cases. See Opinion No. 87-352 attached hereto. Arkansas Supreme Court has generally upheld a duality of legislative and judicial functions as implemented by administrative agencies where a right of judicial review is accorded persons whose rights are adjudicated. Morley v. Fifty Cases of Whiskey, 216 Ark. 528, 226 S.W.2d 344 (1950); Fort Smith v. Department of Public Utilities, 195 Ark. 513, 113 S.W.2d 100
(1938); Civil Service Commission of Van Buren, Arkansas v. Matlock, 206 Ark. 1145, 178 S.W.2d 662 (1944).
On the other hand, at least one recent case decided by the Arkansas Supreme Court expressly rejected a legislative attempt to interpret the law; a function imposed upon the judiciary. Federal Express Corp. v. Skelton, 265 Ark. 187, 578 S.W.2d 1 (1979).
In reviewing Amendment 55, the author of the law review comment previously cited at 28 Ark. L. Rev. 226, 240 stated:
 To some students of government, it might seem incongruous for an amendment to grant members of the legislative and executive branch the exercise of judicial authority as well.
But, the author continues, this is not inconsistent with the development of county government in Arkansas. Whether Amendment 55 actually relieves these officials (both justices of the peace and county judges would be included in that category) of their judicial duties will no doubt be answered by the Arkansas Supreme Court, the author concludes.
Amendment 55, which granted the legislative function to justices of the peace, was enacted subsequent to Art. 4, 2 of our Constitution and thus, as a later expression of the people's legislative direction could possibly be interpreted as overruling the separation of powers provision to that limited extent.
Therefore, in furtherance of a cautious approval towards determination that any provision of Arkansas' Constitution is fallacious, it is my opinion that the answer to your sixth question is "no."
The foregoing opinion, which I hereby approve, was prepared by Solicitor General R.B. Friedlander.